THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES M. SWANSON, Defendant-Appellant.

Third District   No. 3—00—0083

Opinion filed June 1, 2001.

Kerry J. Sluis (argued), of State Appellate Defender's Office, of Ottawa, for appellant.

Joseph Hettel, State's Attorney, of Ottawa (John X. Breslin and Terry A. Mertel (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

Defendant, Charles M. Swanson, was indicted for the offense of

criminal sexual assault, in violation of the section 12—13 of the Criminal Code of 1961 (720 ILCS 5/12—13(a)(1) (West 1998)). The State filed a motion for an extension of the speedy trial deadline under section 103—5 of the Code of Criminal Procedure of 1963 to allow for complete DNA testing (725 ILCS 5/103—5(c) (West 1998)). The trial judge granted the motion. After a jury trial, the defendant was found guilty. Defendant appeals the granting of the State's motion. We affirm.

Debbie Aylward was visiting defendant's mother, Judy Hufton, at a vacation home Hufton rented in the summer of 1999. Defendant was also staying at the rental home.

On July 10, Aylward accompanied defendant to a family wedding, while Hufton was babysitting overnight at the home of a relative. After the wedding, Aylward and defendant returned to the home, watched a video and talked. Aylward fell asleep and when she awoke, the defendant was on top of her. Aylward told defendant "No" and asked that he leave and go to his room. Defendant told Aylward that if she allowed him to have sexual intercourse with her, he would leave her alone. Aylward testified that after she initially balked, she acquiesced because she was frightened and defendant promised to stop harassing her if she agreed to sleep with him. Defendant testified, however, that Aylward initiated the intercourse and never resisted. In any case, defendant and Aylward then had sexual intercourse in the late evening of July 10.

On the morning of July 11, defendant asked Aylward if she intended to tell Hufton about their sexual encounter. Aylward told defendant that she did and testified that defendant then became angry, pinned her down, and attempted to have sexual intercourse again. The telephone rang, and when defendant went to answer it, Aylward broke free, ran to a neighbor's house and called the police.

Officer Michael Renner of the La Salle County sheriff's department investigated the incident and spoke with defendant on July 12. Renner testified that defendant told him that he forced Aylward to have sex with him on the night of July 10. Based on this information, defendant was arrested and charged with domestic battery, a misdemeanor. On July 21, defendant was charged with criminal sexual assault for the incident on the morning of July 11. The same day, Aylward was taken to the hospital where a physical evidence kit was taken. A blood sample was taken from the defendant on July 12. The evidence kit and blood sample were sent to the Illinois State Police crime lab on July 27 for testing.

The crime lab analyzed the evidence kit and notified the State on September 30 that it had identified DNA on the vaginal swab. The

State then asked the crime lab to place the sample on the "ASAP" list to perform DNA testing. On October 6, the State filed a motion for a 30-day extension of the speedy trial deadline pursuant to section 103—5 of the Code of Criminal Procedure (725 ILCS 5/103—5(c) (West 1998)). The trial court granted a 21-day continuance. After a jury trial, defendant was convicted of criminal sexual assault.

■ The Illinois speedy trial statute requires the State to try a defendant who is held in custody within 120 days. In 1990, the legislature amended the statute to accommodate the use of DNA evidence that might otherwise be lost to a speedy trial deadline due to the time demands of DNA testing. Pub. Act 86—1210, eff. August 30, 1990. The amendment provides that a defendant can be held for an additional 120 days without trial if a trial court finds that (1) the State exercised diligence in obtaining the DNA evidence within 120 days, and (2) the results of the DNA testing are material to the case. See 725 ILCS 5/103—5(c) (West 1998).

Defendant contends that the trial court abused its discretion by granting the State's motion both because the State failed to prove diligence and the DNA evidence was not material.

## I. Diligence

■ The speedy trial statute must be liberally construed in defendant's favor because it enforces a constitutional right. See *People v. Reimolds*, 92 Ill. 2d 101, 106, 440 N.E.2d 872, 874 (1982). A reviewing court will not overturn a trial court's ruling on due diligence unless it amounts to a clear abuse of discretion. *People v. Hughes*, 274 Ill. App. 3d 107, 111, 653 N.E.2d 818, 822 (1995). Whether the State has exercised due diligence is a question that must be determined on a case-by-case basis after careful review of the particular circumstances presented. *People v. Brown*, 47 Ill. App. 3d 616, 621, 365 N.E.2d 15, 19 (1977). The State bears the burden of proof on the question of due diligence. *People v. Smith*, 275 Ill. App. 3d 207, 215, 655 N.E.2d 1129, 1136 (1995).

Both parties rely on the case of *People v. Battles*, 311 Ill. App. 3d 991, 724 N.E.2d 997 (2000). In that case, the State filed a motion to continue trial for an additional 120 days to obtain DNA test results under section 103—5(c). The trial court allowed the motion and entered the ruling without findings.

■ On appeal, defendant challenged the ruling on the grounds that the State had failed to show due diligence in the procurement of the DNA testing results. The appellate court prescribed three requirements to assess prosecutorial diligence in obtaining test results within the initial speedy trial period: first, the State should provide a full

explanation of each and every step taken to complete DNA testing within the 120-day term; second, taken together, these steps must comprise a course of action that a reasonable and prudent person intent upon completing tests within 120 days would follow; and third, the State should explain why those efforts fell short and resulted in an unavoidable delay. *Battles*, 311 Ill. App. 3d at 998, 724 N.E.2d at 1002.

In *Battles*, the court found that the State did not meet its burden of showing that it made a serious attempt to complete DNA testing within the 120-day speedy trial term. The court noted that the State took 72 days to decide whether it should even perform DNA testing; sent the sample to the wrong lab; had not yet sent the sample to the correct lab at the time of the hearing; and never followed up with the lab or expedited the testing by placing it on the "ASAP" list. The court concluded that "[t]he State did not use section 103—5(c) as a refuge from an approaching deadline after a diligent but failed effort to obtain tests in time for use at trial," but as a "vehicle to cure the time problem created by its *lack* of effort." (Emphasis in original.) *Battles*, 311 Ill. App. 3d at 1004, 724 N.E.2d at 1007. The court concluded that granting the State's motion for a continuance was an abuse of discretion.

In this case, the State presented different circumstances to the trial court. A blood sample was taken from defendant on July 12, the day he was taken into custody. However, defendant was not charged with criminal sexual assault for the July 11 incident until July 21. The blood sample and evidence collection kit were sent to the crime lab July 27 to determine if DNA was present for testing. Since the State did not know whether the evidence collection kit contained DNA because Aylward had taken a shower after the intercourse on the evening of July 10, the evidence collection kit first had to be tested for the presence of DNA.

Due to a backlog, the lab did not perform the tests until September 28; two days later, the lab notified the State that the evidence collection kit contained material suitable for testing. The State immediately requested DNA testing and placement on the "ASAP" list.

At the hearing on the motion for a continuance, the trial court noted that defendant had been in custody less than 90 days, 30 days of the original speedy trial term remained, and the purpose of the statute was to allow an extension where time-consuming scientific analysis is required. The court granted the motion and set a trial date of November 29, only 21 days past the original speedy trial deadline.

Defendant contends that the State knew that material was available for DNA testing when it took defendant's blood sample. He further argues that after the sample was taken, the State did not follow

up with the crime lab or try to expedite the initial testing and now relies on the lab's backlog as an excuse for the delay.

"In light of the due diligence requirement, a belated decision to test for DNA evidence must be reasonable in its particulars." *Battles*, 311 Ill. App. 3d at 1004, 724 N.E.2d at 1007.

■ The ability to perform DNA testing depends on whether a DNA sample is present to test. Here, 80 days passed before the State knew if there was DNA available for testing. For the first 21 days, the State did not know whether it would need to test, as DNA was unnecessary for prosecution of the original domestic battery charge. Once defendant was charged with criminal sexual assault, samples were sent to the lab for the initial testing. When the lab advised that DNA was present, the State immediately requested placement on the "ASAP" list and six days later filed its motion for continuance. The trial judge granted the continuance, but for only 21 days, 9 days less than the prosecutor sought.

After analyzing the specific facts and circumstances present in this case, we believe that the State fully explained the steps taken to complete DNA testing within the 120-day term. The State's attempts to complete the testing within 120 days, while not as expedient as, perhaps, they might have been, were reasonable and adequately explained why there was an unavoidable delay. Considering the decisions it had to make, the State's actions were not "unreasonable in [their] particulars." We cannot say that the trial court abused its discretion by granting the motion.

## II. Materiality

■ Defendant also argues that the DNA evidence was not material because (1) the first sexual encounter was not the basis for the charge, and (2) DNA evidence was not necessary to prove the sexual conduct the night before because he did not contest it at trial. Thus, the evidence could only prejudice the jury. On the other hand, the State theorizes that the DNA evidence makes defendant's testimony less credible because it supports Aylward's version of the incident.

Evidence is material when it is probative of a question before the trier of fact. *People v. Favors*, 254 Ill. App. 3d 876, 888, 626 N.E.2d 1265, 1275 (1993).

Here, the DNA evidence was material to what occurred the next morning; it supported Aylward's testimony that defendant tried to sexually assault her when she threatened to tell Hufton. Since this evidence tends to corroborate Aylward's version of the course of events, it was not an abuse of discretion to grant the State's motion for a continuance.

Defendant also argues that since he did not contest the July 10 sexual encounter at trial, the test results were not material. When a grant of a section 103—5(c) motion is challenged, the reviewing court must consider the record as it existed at the time the motion for continuance was considered. *People v. Hughes*, 274 Ill. App. 3d 107, 111, 653 N.E.2d 818, 822 (1995). At the time of the hearing on the motion, defendant had not yet conceded sexual intercourse took place on July 10. We cannot determine if the trial court erred because defendant's argument was not and could not have been an issue before the court at that time.

## CONCLUSION

The judgment of the circuit court of La Salle County is affirmed.

Affirmed.

HOMER, P.J., and SLATER, J., concur.