NO. 4-01-0439

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

) Champaign County

JOHNNY L. COLSON, ) No. 00CF2106

Defendant-Appellant. ) 

) Honorable

) Thomas J. Difanis,

) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

Defendant, Johnny L. Colson, was convicted by a jury of committing the offense of aggravated criminal sexual assault (720 ILCS 5/12-14 (West 2000)) and sentenced to 30 years in prison.  Defendant appeals, arguing that his speedy-trial rights were violated.  See 725 ILCS 5/103-5 (West 2000).  We affirm. 

Defendant was arrested on November 27, 2000.  On that date, defendant had allegedly forced his ex-girlfriend into his car and then taken her to a secluded location, where he battered and raped her.  Defendant did not make bond and remained in custody from the time of his arrest until his trial.

The State brought defendant to trial on April 12, 2001, after 135 days of defendant being in custody.  Pursuant to section 103-5 of the Code of Criminal Procedure of 1963 (speedy-trial statute), a defendant who remains in custody, as this defendant did, must be brought to trial within 120 days.  725 ILCS 5/103-5(a) (West 2000).  When the defendant is in custody, no demand is required to begin the running of the 120-day term.  
People v. Johnson
, 323 Ill. App. 3d 284, 288, 751 N.E.2d 621, 625 (2001).  If the defendant in custody is not brought to trial within 120 days, then the defendant must be discharged from custody.  725 ILCS 5/103-5(d) (West 2000). 

The speedy-trial statute provides exceptions that suspend the running of the 120-day term, thereby allowing a defendant in custody to be brought to trial beyond 120 days.  One exception is when the defendant himself is responsible for the delay.  See 725 ILCS 5/103-5(f) (West 2000).  Another exception allows the State to move for a continuance for up to an additional 120 days: 

"[i]f the court determines that the State 

has exercised without success due diligence 

to obtain results of DNA testing that is 

material to the case and that there are 

reasonable grounds to believe that such 

results may be obtained at a later day ***."  

725 ILCS 5/103-5(c) (West 2000).  

In this case, the State asked for, and was granted, a continuance pursuant to section 103-5(c) to obtain DNA (deoxyribonucleic acid) test results.  The grant of a section 103-5(c) continuance extends the 120-day speedy-trial term to a maximum of 240 days.  The State brought defendant to trial in 135 days, within the 240-day limit.

Defendant argues on appeal that the trial court abused its discretion in granting the continuance because the State made no showing of due diligence as required by the speedy-trial statute.  The State argues that defendant is himself responsible for 26 days of the delay because he requested a continuance, meaning that for purposes of the speedy-trial statute only 109 days accrued and no violation of the statute occurred.  The State also argues that even if defendant was not responsible for any delay in bringing the case to trial, the continuance for DNA testing was properly granted.

We begin our analysis by addressing the State's argument that defendant is himself responsible for 26 days of delay because he asked for a continuance.  This requires an extensive examination of the proceedings in the trial court regarding the alleged request for continuance. 

The pretrial was initially set for January 24, 2001.  The proceedings at the January 24, 2001, hearing follow in their entirety:

"[THE COURT]:  2106, Johnny L. Colson.

[MR. BULLOCK (defendant's counsel)]:  Your 

Honor, I believe that should be set for motions 

tomorrow.

[THE COURT]:  Motions tomorrow, 9:30, in 

F.  Defendant's in custody."

The docket entry for the January 24, 2001, hearing states as follows:

"Appearance of the State's Attorney.  

Suggestion that the [d]efendant is in custody.  

Motion by [d]efendant for continuance.  Motion 

allotted for hearing 1/25/2001 at 9:30 AM 

in Courtroom F."

On January 25, 2001, Assistant State's Attorney Elizabeth Dobson filed a written motion for continuance to obtain DNA evidence pursuant to section 103-5(c).  The motion contained the following allegations:

"1. The defendant in this case is charged 

with [a]ggravated [c]riminal [s]exual [a]ssault

(class X felony) and has been in custody since 

November 27, 2000.

2.  The defense has indicated a request 

that the case be continued until the February 

21, 2001[,] pretrial, on the defendant's motion.    

3.  The People have no objection to that 

motion and further request, on the State's 

motion, that the cause be continued until the 

March 28, 2001[,] pretrial.  The alleged offense 

occurred in a vehicle and certain items of 

evidence from the vehicle, as well as samples 

from the victim and standards from the defen-

dant have been forwarded to the Illinois State 

Police Crime Laboratory in Springfield, 

Illinois[,] for DNA analysis.  The State's 

continuance is requested pursuant to 725 ILCS 

5/103-5(c)."

The affidavit attached to the motion contained similar averments.

A short hearing was held on January 25, 2001, where the following exchange occurred:

"[MR. KENNEDY (prosecutor)]:  Your Honor, 

this is Ms. Dobson's motion to continue and 

affidavit.  Ms. Dobson's request in this case 

is that, since there is lab work, there is 

DNA work being done, that she is asking in 

accord with her motion, that the continuance 

be until March 28th of 2001 and then for the 

trial setting in the April trial term.

[MR. BULLOCK]:  
I
 
would
 
object
.

[THE COURT]:  All right.  It seems to me 

that this is a file that we don't want any 

disarray on.  I prefer to have a hearing on 

the motion."  (Emphasis added.)

The trial court set the hearing for the next morning on January 26, 2001, when Assistant State's Attorney Dobson would be available.

At the January 26, 2001, hearing, the following exchange occurred:

"[MS. DOBSON]:  I am moving to continue, 

Your Honor, until the April trial term in 

this matter.  I have also discussed with 

counsel the fact that I am going to be un-

available to try cases in the month of March, 

as I will be involved in a case being tried 

out of county.  With regard to [defendant's] 

matter, the alleged incident occurred in a 

vehicle.  Samples were taken of what appeared 

to be hair and body fluid from the vehicle.  

Samples were sent to the Illinois State Police 

Crime Laboratory for DNA analysis.  I am re-

questing this continuance for two months 

pursuant to 725 ILCS 5/103-5(c), the extended 

time frames pertaining to DNA analysis.  This 

defendant has been in custody since November 

27th of 2000.  That indicates that as of the 

commencement of the April jury term, April 

9th, that would be 134 days total, which is 

within a time for an extended continuance 

based on DNA reports.  So, that is my request, 

for a continuance until that time.

[THE COURT]:  Mr. Bullock.

[MR. BULLOCK]:  Your Honor, I realize 

that Ms. Dobson is probably entitled to the 

continuance.  
We
 
would
 
object
.  I believe 

that the 120 days is not yet tolled.  The 

DNA results are not in.  I realize that if 

the--waiting for the DNA results requires an 

extension beyond the 120 days, that the State 

would be entitled to it.  However, I am not 

sure that--if the DNA results do come in 

before the 120 days are up, I don't believe 

that there is any additional extension that 

the People are entitled to, if the DNA results 

are in.  And, so, 
I
 
would
 
object
--
I
 
would
 

ask
 
that
--
I
 
would
 
object
 
to
 
the
 
continuance
 

and
 
ask
, 
if
 
it's
 
going
 
to
 
be
 
continued
, 
that
 

it
 
be
 
continued
 
to
 
the
 
next
 
pre[]trial
.  So, 

we can determine if the DNA results are in 

and that the issue of extending beyond the 

120 days for the DNA results be--that the 

[c]ourt not rule on that until we find out 

that it's necessary.  Until the 120 days 

actually has passed or is about to pass, and 

the DNA results are not in.  If they are in 

before then, I would ask that, at least, 

that an unnecessary extension not be granted 

in anticipation of them being more than 120 

days.

[THE COURT]:  Ms. Dobson.

[MS. DOBSON]:  Well, in terms of the 

defense objection to my continuance until 

next month, as Mr. Bullock has indicated, I 

am statutorily entitled to proceed the way I 

have, to obtain the results that I believe 

are necessary in this case.  I can understand 

why the defendant wouldn't want me to have 

them.  I have a right to them and so, I 

think that as a matter of right I should 

have the continuance until the February 

pretrial for the March term.  It's my ex-

perience in dealing with these matters that 

the DNA results are not likely to be finished 

before the April term anyway.  
Should
 
the
 

results
 
come
 
back
 
early
, 
I
 
am
 
still
 
requesting
 

a
 
continuance
 
now
 
within
 
the
 
120
 
days
 
I
 
have
 

initially
, 
as
 
opposed
 
to
 
the
 
DNA
 
continuance
, 

because
 
I
 
want
 
to
 
be
 
the
 
one
 
to
 
try
 
this
 
case
.  

As things have happened in my office, there 

are few people available who have been 

trained or experienced in the presentation 

of DNA evidence.  I am one of those people 

right now and I would like to handle this 

matter myself.  So, I am requesting a con-

tinuance until the March pre[]trial and the 

April term."  (Emphases added.)

The court granted a continuance until the February pretrial and the March jury term.  This was not a continuance beyond the initial 120-day speedy-trial term.  The court declined to rule on a continuance beyond the March term to wait and see if the DNA results came in and if a continuance beyond the 120-day speedy-trial term was even necessary.

The State's argument that defendant asked for a continuance until the February pretrial, and is therefore himself responsible for 28 days of delay, is based primarily upon the January 24, 2001, docket entry, which shows defendant asked for a continuance, and Ms. Dobson's motion for continuance, which alleged that defendant had asked for a continuance until the February pretrial.  The State also argues that defendant consented to the continuance until the February pretrial at the January 26, 2001, hearing.  See, 
e.g.
, 
People v. Smith
, 251 Ill. App. 3d 839, 842, 623 N.E.2d 857, 860 (1993) (an agreement on the record to a continuance is attributable to the defendant).  We find that the record does not support the State's assertion that defendant asked for or consented to a continuance until the February pretrial.

First, no written defense request for a continuance is anywhere in the record.  Second, defendant never made any oral requests for a continuance at any of the hearings.  The closest thing that came to a request for continuance by defendant was his counsel's statement at the January 24, 2001, hearing, "Your Honor, I believe that should be set for motions tomorrow."  Based on the record, this can be construed at most as a request for a continuance only until the next day.  Considering what happened at the January 24, 2001, hearing, the January 24, 2001, docket entry, which stated that defendant asked for a continuance, does not support the State's argument that defendant asked for a continuance until the February pretrial.

Regarding Ms. Dobson's averment in her motion to continue and attached affidavit that defendant had indicated a request for a continuance until the February pretrial, no support for that claim is in the record.  Again, no written or oral defense requests are in the record for a continuance until the February pretrial.  Further, when the State presented the motion for continuance at the January 25, 2001, hearing, defendant flatly objected.  At the January 26, 2001, hearing on Ms. Dobson's motion for continuance, defendant objected again--three times.  

Finally, defendant did not, as the State suggests, consent to the continuance until the February pretrial but only object to a continuance beyond that.  Defendant stated:  "I would object--I would ask that--I would object to the continuance and ask, if it's going to be continued, that it be continued to the next pre[]trial."  Defendant therefore objected to any continuance, but asked that if one were to be granted, it should only be until the February pretrial, when it could be determined if a continuance beyond the 120-day speedy-trial term would even be necessary.  

The State's claim that defendant asked for or consented to a continuance until the February pretrial is not supported by the record.  We therefore find that defendant is not responsible for any delay in bringing the case to trial.

We next address defendant's argument that his speedy-trial rights were violated.  Had there been a February pretrial and a March trial as scheduled, then the trial would have occurred within the 120-day window, and there would have been no violation of the speedy-trial statute.  However, on February 22, 2001, Ms. Dobson filed a second motion to continue pursuant to section 103-5(c) for DNA testing. The February 22, 2001, motion contained the following allegations:

"1.  The defendant is charged with [a]ggra-

vated [c]riminal [s]exual [a]ssault and has 

been in custody since November 27, 2000.        

2.  That the alleged offense occurred in 

a vehicle and certain items of evidence from 

the vehicle, as well as standards from the 

victim and standards from defendant have 

been forwarded to the Illinois State Police 

Forensic Sciences Laboratory in Springfield, 

Illinois[,] for DNA analysis.

3.  The State's continuance is requested 

pursuant to 725 ILCS 5/103-5(c).  

WHEREFORE the People request that the 

case be continued to the pretrial hearing of 

March 28, 2001."

The attached affidavit contained similar averments.

At the February 22, 2001, hearing on the motion to continue, the following exchange took place:

[MR. HARRIS (prosecutor)]:  May I 

approach?

[THE COURT]:  Yes.  We will show Mr. 

Harris, Mr. Bullock.  Motion by the People 

for a continuance awaiting lab results, 

including DNA analysis.  Mr. Bullock.

[MR. BULLOCK]:  I would object, Your 

Honor.  There is DNA evidence that hasn't 

returned.  That this is a request for an ex-

tension beyond the 120 days.  It is not 

simply an extension awaiting lab results.

[THE COURT]:  I understand that, Mr. 

Bullock.  What do you think the State has to 

put in [its] motion?

[MR. BULLOCK]:  I think that they have 

to put in--at least allege that there has 

been due diligence and that the backup is un-

avoidable.

[THE COURT]:  Show the motion to continue.  

Objection.  The objection is overruled.  This 

matter will be continued to the pretrial of 

March 28 at 9:30 in Courtroom A.  Trial term 

beginning April 9."

The results of the DNA testing came back from the Joliet, Illinois, forensic science lab in a report dated March 21, 2001.  March 21 marked 114 days into the 120-day speedy-trial term.

The State moved for another continuance on March 28, 2001.  No written motion appears in the record.  The docket sheet does not indicate the basis or extent of the continuance or whether the continuance was granted or denied.  At the March 29 hearing on the State's motion to continue, defendant filed a motion to dismiss for a violation of the speedy-trial statute.  

On April 11, 2001, the day of trial and 135 days after defendant was taken into custody, the court heard defendant's motion to dismiss for violation of the speedy-trial statute.  Defendant argued that the February 22 continuance for DNA testing pursuant to section 103-5(c) should not have been granted because the State made no showing of due diligence as required by the statute.  The trial court denied defendant's motion to dismiss.  The trial proceeded, and defendant was convicted and sentenced.  Defendant raised the issue again in a posttrial motion, preserving it for appeal.  The trial court denied the posttrial motion.

On appeal, defendant argues that the trial court erred in granting the February 22, 2001, motion for continuance for DNA testing because the State failed to make a showing that it exercised due diligence in trying to obtain the DNA test results before the running of the 120-day speedy-trial term.  The speedy-trial statute states that a continuance for DNA testing results may be granted "[i]f the court determines that the State 
has
 
exercised
 
without
 
success
 
due
 
diligence
 to obtain results of DNA testing that is material to the case and that there are reasonable grounds to believe that such results may be obtained at a later day."  (Emphasis added.)  725 ILCS 5/103-5(c) (West 2000).  The speedy-trial statute must be liberally construed in a defendant's favor because it enforces a constitutional right.  
People v. Swanson
, 322 Ill. App. 3d 339, 342, 751 N.E.2d 1182, 1184 (2001).  Thus, the State is required to show it exercised without success due diligence.  Whether due diligence has been exercised is to be determined on a case-by-case basis.  
People v. Battles
, 311 Ill. App. 3d 991, 997, 724 N.E.2d 997, 1002 (2000).  The burden of proving due diligence is on the State.  
Battles
, 311 Ill. App. 3d at 997-98, 724 N.E.2d at 1002.  Therefore, the issue presented for review is whether in this case the trial court could have found that the State exercised due diligence in trying to obtain the DNA results before the running of the 120-day speedy-trial term.  We will not overturn the trial court's ruling on due diligence unless it amounts to a clear abuse of discretion.  
People v. Hughes
, 274 Ill. App. 3d 107, 111, 653 N.E.2d 818, 822 (1995).   

What constitutes "due diligence," and therefore what the State must prove to be granted a continuance for DNA testing, is not defined by the statute.  However, other courts have addressed this issue.  The Fifth District recently held that before a section 103-5(c) motion for continuance for DNA testing can be granted:

"the State should tender a full explanation 

of each and every step taken to complete DNA 

testing within the 120-day speedy[-]trial term.  

The steps articulated should comprise a 

course of action that a reasonable and pru-

dent person intent upon completing tests 

within 120 days would follow.  Further, the 

showing should explain why the efforts engaged 

in fell short of their objective and resulted 

in an unavoidable need for delay."  
Battles
, 

311 Ill. App. 3d at 998, 724 N.E.2d at 1002.

The court in 
Battles
 suggested that steps taken by the State that would show due diligence might include expeditious gathering of evidence and the prosecutor contacting the laboratory technicians responsible for processing the evidence to impress upon them the need for expediency or, if a delay is inevitable, to find out how long the delay will be.  
Battles
, 311 Ill. App. 3d at 1002, 724 N.E.2d at 1005.  The Third District followed the Fifth District's example in 
Battles
 and found that the State did exercise due diligence when it promptly requested DNA testing and requested that the testing be placed on the ASAP (as soon as possible) list.  
Swanson
, 322 Ill. App. 3d at 343-44, 751 N.E.2d at 1185-86.

We decline to follow the Fifth District's holding in 
Battles
 to the extent that it imposes a delineated series of steps that a prosecutor must go through before getting a continuance for DNA testing.  We agree with 
Battles
 to the extent that it holds that the State must exercise due diligence in getting DNA testing done.  The provision for DNA testing was not meant to provide an automatic continuance in every trial that involved DNA testing because the statute requires that the State must exercise "without success due diligence to obtain results of DNA testing."  725 ILCS 5/103-5(c) (West 2000).  However, we choose to stick with the established rule, also stated in 
Battles
, that due diligence is to be determined on a case-by-case basis.  
Battles
, 311 Ill. App. 3d at 997, 724 N.E.2d at 1002. 

In this case, defendant was arrested and placed in custody on November 27, 2000.  On January 19, 2001, the crime lab received the sexual assault evidence kit and defendant's blood samples.  The crime lab received samples of the victim's boyfriend's blood for DNA analysis on February 15, 2001.  All of the DNA testing results were completed on March 21, 2001.  

The State did not delay excessively in getting the DNA materials to the lab.  The lab did not take an excessively long time in getting the results processed.  Defendant suggests that the State's request for a continuance was a ruse because Ms. Dobson said that she wanted a continuance in addition to a DNA continuance so she could try the case.  However, the trial court did not grant Ms. Dobson's personal continuance, and when the State asked for the continuance on February 22, it was because the results were not back yet and the State actually needed the continuance.  In short, while the State could have perhaps done better, it pursued a course of action meant to get the DNA testing done as soon as possible, and the record gives no indication that the request was a ruse.  The trial court therefore could properly find that the State had acted with due diligence.  The grant of the continuance was not an abuse of discretion, so we affirm.

Affirmed. 

      KNECHT and McCULLOUGH, JJ., concur.