No. 2--08--0976      Filed: 11-30-09  Corrected 2-1-12

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 08--CF--1191 |
| WILLIAM SPEARS, | ) ) | Honorable Ronald J. White, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

William Spears appeals his conviction of possession of 15 grams or more but less than 100 grams of a substance containing cocaine with the intent to deliver (720 ILCS 570/401(a)(2)(A) (West 2008)). He contends that the trial court erred when it granted the State's motion to extend the speedy-trial deadline in order to complete DNA testing under section 103--5(c) of the Code of Criminal Procedure of 1963 (the speedy-trial statute) (725 ILCS 5/103--5(c) (West 2008)), resulting in his not being brought to trial within 120 days as required by section 103--5(a) of the speedy-trial statute (725 ILCS 5/103--5(a) (West 2008)). The trial court did not abuse its discretion when it determined that the State exercised due diligence. Accordingly, we affirm.

I. BACKGROUND

Spears was taken into custody on April 3, 2008. On May 2, 2008, trial was set for June 9, 2008. During that time, the crime lab was examining bags of narcotics that were found at the crime scene.

On June 6, 2008, trial was continued over Spears' objection until June 23, 2008, because crime lab reports had not been completed. On June 16, 2008, the State again asked to continue trial, because the lab analysis was still not complete. The trial court asked if the State had any idea when the tests would be completed, and the State responded that it would inform the lab of the next court date and ask that the tests be done ahead of that date. The court set July 1, 2008, as the date for the reports to be completed and set trial for July 14, 2008.

On June 27, 2008, the State prepared a discovery response, referring to lab reports dated June 19 and 20, 2008. On July 7, 2008, a stand-in prosecutor requested a continuance for additional time to prepare for trial and was unable to address whether all discovery had been completed. Trial was reset for July 28, 2008. On July 22, 2008, the State provided a supplemental discovery response, referring to another lab report, prepared by Keia Brown and dated July 8, 2008.

On July 23, 2008, the State moved to compel Spears to submit to withdrawal of saliva, because the lab had requested a DNA standard in order to conduct a confirmatory test against swabs taken from the bags of narcotics. The State also sought authorization to test, because the sample from the swabs might be consumed. The court inquired about the late reception of the July 8 report from Brown. The assistant State's Attorney responded that she had been on vacation until July 14 and had received the report after her return. The report was included in a discovery response that she asked a staff member to prepare on July 16. She then did not see that discovery response right away because it was under papers on her desk. In regard to the additional testing, she said that she

would speak to the lab, ask about the time frame, and request that the testing be expedited. The State expressed its belief that the lab was proceeding as quickly as possible and that it needed the additional samples in order to complete its analysis. Spears' counsel and the court each expressed concerns about delays in the testing.

On July 24, 2008, the State moved to delay trial by 120 days under section 103--5(c), alleging that evidence suitable for DNA analysis had been sent for testing and that, on July 8, 2008, the lab requested a sample from Spears for comparison and sought authorization to test because of possible consumption of the swabs. The State then added: "the Crime Lab indicated that for a case with a small sample size where the sample may be consumed in testing, the testing does take longer and may need to be sent to a different crime lab for more sensitive chemistry testing." At a hearing that same day, the State told the court that the lab reported that it would need 120 days to complete the testing. The State also said that it had informed the lab that it would let the lab know when a trial date was set and that the lab would have to "move along on that." The court continued the trial over Spears' objection, stating that there had been due diligence. Trial was then set for October 14, 2008.

Between July 24 and October 14, 2008, there were various continuances that are not relevant to determining this appeal. On October 14, 2008, Spears moved to dismiss because he was not brought to trial within 120 days as required by section 103--5(a), and a hearing was held. At the hearing, Brown testified about reasons for delays in the testing before July 2008, indicating that she had been unable to examine the items until chemistry and fingerprint testing had been done by other analysts. She stated that during that time she had not been contacted by the assistant State's Attorney to request that testing be expedited. Brown was not able to begin the actual testing until August 4, 2008, and later found that there was no DNA suitable for comparison. The court denied the motion,

finding that based on the evidence as of July 23, 2008, when the trial was continued under section 103--5(c), the State had exercised due diligence.

Spears was convicted. A presentence report stated that, at the time of that report, the Department of Corrections had a hold on Spears. The trial court's docket sheet also stated, in an entry dated April 4, 2008, "DOC Hold," but there is no written speedy-trial demand in the record. Spears' motion for a new trial was denied. He appeals.

## II. ANALYSIS

Spears contends that the trial court erred when it found that the State had exercised due diligence and allowed a continuance under section 103--5(c). The State responds that it had exercised due diligence. In the alternative, the State argues that Spears failed to comply with section 3--8--10 of the Unified Code of Corrections (the intrastate detainers statute) (730 ILCS 5/3--8--10 (West 2008)). There is no dispute that, if the State acted with due diligence so that the court's grant of an additional 120 days under section 103--5(c) was proper, Spears was brought to trial within the speedy-trial period.

"The right to a speedy trial is guaranteed by the Federal and Illinois Constitutions (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8)." People v. Staten, 159 Ill. 2d 419, 426 (1994). A criminal defendant in Illinois also has a statutory right to a speedy trial. 725 ILCS 5/103--5 (West 2008). The speedy-trial statute enforces the constitutional right to a speedy trial, and its protections are to be liberally construed in favor of the defendant. People v. Buford, 374 Ill. App. 3d 369, 372 (2007). "[T]he statutory right to a speedy trial is not the precise equivalent of the constitutional right." Staten, 159 Ill. 2d at 426. "Proof of a violation of the statutory right requires only that the

defendant has not been tried within the period set by statute and that defendant has not caused or contributed to the delays." Staten, 159 Ill. 2d at 426.

Section 103--5(a) of the speedy-trial statute provides an automatic 120-day speedy-trial right for a person held in custody on the pending charge and does not require such a person to file a demand to exercise that right. 725 ILCS 5/103--5(a) (West 2008). In 1990, the legislature amended the speedy-trial statute to accommodate the use of DNA evidence that might otherwise be lost to a speedy-trial deadline due to the time demands of DNA testing. People v. Swanson, 322 Ill. App. 3d 339, 342 (2001), citing Pub. Act 86--1210, eff. August 30, 1990; see 725 ILCS 5/103--5(c) (West 2008). "The amendment provides that a defendant can be held for an additional 120 days without trial if a trial court finds that (1) the State exercised diligence in obtaining the DNA evidence within 120 days, and (2) the results of the DNA testing are material to the case." Swanson, 322 Ill. App. 3d at 342, citing 725 ILCS 5/103--5(c) (West 1998).

"A reviewing court will not overturn a trial court's ruling on due diligence unless it amounts to a clear abuse of discretion." Swanson, 322 Ill. App. 3d at 342. "A trial court abuses its discretion where its decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the trial court's view." People v. Garcia-Cordova, 392 Ill. App. 3d 468, 487-88 (2009). "Whether the State has exercised due diligence is a question that must be determined on a case-by-case basis after careful review of the particular circumstances presented." Swanson, 322 Ill. App. 3d at 342. "The State bears the burden of proof on the question of due diligence." Swanson, 322 Ill. App. 3d at 342. On a legal question, however, the standard of review is de novo. People v. King, 366 Ill. App. 3d 552, 554 (2006).

"Whether the trial court abused its discretion when it determined the exercise of due diligence is a question reviewed by an examination of what information the court had before it when it made

its finding." People v. Battles, 311 Ill. App. 3d 991, 1003 (2000). Thus, when a defendant challenges the trial court's grant of a continuance under section 103--5(c), we examine the record as it existed at the time of the motion. Battles, 311 Ill. App. 3d at 1003, citing People v. Hughes, 274 Ill. App. 3d 107, 111 (1995). Section 103--5(c) does not define "due diligence," and there is some disagreement among the appellate districts on whether there is a specific test for whether the State acted with due diligence.

Spears relies on the Fifth District case of Battles. There, the State filed a motion under section 103--5(c) to continue trial for an additional 120 days to obtain DNA test results. The trial court allowed the motion without making factual findings. On appeal, the defendant challenged the ruling, arguing that the State failed to show due diligence in procuring the DNA test results. In defining the State's burden of proof in regard to due diligence, the appellate court prescribed three requirements: (1) the State should provide a full explanation of each and every step taken to complete DNA testing within the 120-day term; (2) the steps articulated should comprise a course of action that a reasonable and prudent person intent upon completing tests within 120 days would follow; and (3) the State should explain why those efforts fell short of their objective and resulted in an unavoidable delay. Battles, 311 Ill. App. 3d at 998.

The Battles court found that the State did not meet its burden of showing that it exercised due diligence to obtain the DNA test results within the speedy-trial term. The court noted the following facts from the case: the State took 72 days to decide whether to perform DNA testing; sent the sample to the wrong lab; had not yet sent the sample to the correct lab at the time of the hearing; never followed up with the lab; and never expedited the testing. The court concluded that "[t]he State did not use section 103--5(c) as a refuge from an approaching deadline after a diligent but failed effort to obtain tests in time for use at trial," but as a "vehicle to cure the time problem created

-6-

by its lack of effort." (Emphasis in original.) Battles, 311 Ill. App. 3d at 1004. Thus, the court determined that granting the State's motion for a continuance was an abuse of discretion.

In comparison, in People v. Colson, 339 Ill. App. 3d 1039, 1047 (2003), a case involving a sexual assault, the State sought a continuance under section 103--5(c), stating only that evidence had been submitted for testing and that the results had not been received. The trial court granted the motion over the defendant's objection and argument that the State was required to allege due diligence. On appeal, the Fourth District refused to adopt the three requirements set forth in Battles to show due diligence. The court agreed, however, that "due diligence is to be determined on a case-by-case basis." Colson, 339 Ill. App. 3d at 1048.

Looking to the circumstances of the case, the court observed that the crime lab received the evidence to be tested about three weeks after the arrest. The lab received a sample of the victim's boyfriend's blood for comparison about a month after that. A little over a month later, the test results were completed. The court determined that the State did not delay excessively and that the lab did not take an excessively long time in getting the results processed. Colson, 339 Ill. App. 3d at 1048. The court then stated: "In short, while the State could have perhaps done better, it pursued a course of action meant to get the DNA testing done as soon as possible, and the record gives no indication that the request was a ruse." Colson, 339 Ill. App. 3d at 1048. Accordingly, the court found that the trial court did not abuse its discretion when it granted the continuance. Colson, 339 Ill. App. 3d at 1048.

In Swanson, 322 Ill. App. 3d at 342-43, the Third District did not expressly adopt the three requirements set forth in Battles, but the court generally cited to Battles and then distinguished it based on the circumstances of the case. Swanson involved a blood sample taken from the defendant on the day that he was taken into custody. However, he was not charged for several weeks, and the

evidence was sent to the crime lab about a week after that to determine if DNA was present for testing. Due to a backlog, the lab did not perform the tests until approximately two months later. When the lab notified the State that the evidence contained material suitable for testing, the State immediately requested DNA testing and placement on the " 'ASAP list.' " Swanson, 322 Ill. App. 3d at 343. The State moved for a continuance under section 103--5(c), and the trial court noted that the defendant had been in custody less than 90 days, that 30 days of the original speedy-trial term remained, and that the purpose of the statute was to allow an extension where time-consuming scientific analysis is required. The court granted the motion and set a trial date only 21 days past the original speedy-trial deadline.

The Third District affirmed and adopted the reasoning from Battles that " '[i]n light of the due diligence requirement, a belated decision to test for DNA evidence must be reasonable in its particulars.' " Swanson, 322 Ill. App. 3d at 344, quoting Battles, 311 Ill. App. 3d at 1004. The court found that, once the State knew there was material available for DNA testing, it immediately requested that the testing be expedited and it quickly filed its motion to continue. The court stated:

"The State's attempts to complete the testing within 120 days, while not as expedient as, perhaps, they might have been, were reasonable and adequately explained why there was an unavoidable delay. Considering the decisions it had to make, the State's actions were not 'unreasonable in [their] particulars.' We cannot say that the trial court abused its discretion by granting the motion." Swanson, 322 Ill. App. 3d at 344.

Here, as in Colson, we do not adopt the three specific requirements found in Battles. Section 103--5(c) does not set forth such a specific test. However, we agree that due diligence must be determined on a case-by-case basis. Certainly the three requirements set forth in Battles may be

useful considerations in many cases, but applying them as a bright-line test cuts against the ability to consider each case based on its own unique circumstances.

Looking to the circumstances here, when the State moved to continue, the trial court did not abuse its discretion when it determined that the State acted with due diligence. The case involved the testing of materials that initially were examined for fingerprints. Thus, it was late in the testing process when the possibility of DNA evidence came to light. During that time, the assistant State's Attorney was on vacation. Although there was a slight delay in addressing the report upon her return, it was turned over to the defense just over a week after that. She then promptly sought to extend the speedy-trial period when the lab informed her that up to 120 days were needed to complete the analysis.

Unlike Battles, where there were no meaningful attempts at expedience, and there was evidence that the prosecution simply sought refuge from an approaching deadline, here there is no evidence that the State sought to unreasonably delay the case. Although it may have been preferable for the State to have pushed the crime lab for a speedier result earlier in the case, the State did not act unreasonably. Accordingly, the trial court did not abuse its discretion when it granted the State's motion, and Spears was brought to trial in the time period required under section 103--5(c). Because we affirm on that basis, we need not, and do not, address whether Spears failed to comply with the intrastate detainers statute.

### III. CONCLUSION

The trial court did not abuse its discretion when it granted the State's motion under section 103--5(c), and Spears was brought to trial within the statutory speedy-trial period. Accordingly, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

McLAREN and JORGENSEN, JJ., concur.