2022 IL App (3d) 180598

Opinion filed April 21, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal Nos. 3-18-0598 & 3-18-0599 Circuit Nos. 14-CF-33 & 15-CF-151 |
| JAMICQUIN MCKINSTRY, | ) ) | The Honorable Kathy S. Bradshaw-Elliott, |
| Defendant-Appellant. | ) | Judge, presiding. |

Presiding JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Schmidt and Lytton concurred in the judgment and opinion.
Justice Lytton also specially concurred, with opinion.

**OPINION**

¶ 1    The defendant, Jamicquin McKinstry, was convicted in Kankakee County circuit court case No. 14-CF-33 of armed robbery (720 ILCS 5/18-2(a)(1) (West 2012)), robbery (*id.* § 18-1), and aggravated battery (*id.* § 12-3.05(c)). He was sentenced to two years of conditional discharge.

¶ 2    In case No. 15-CF-151, McKinstry was convicted of home invasion (720 ILCS 5/19-6(a)(4) (West 2014)), attempted armed robbery (*id.* § 8-4(a)), two counts of aggravated battery (*id.* § 12-3.05(f)(1)), and reckless discharge of a firearm (*id.* § 24-1.5). He was sentenced to a

total of 27 years of imprisonment and his conditional discharge in case No. 14-CF-33 was revoked.

¶ 3        On appeal, McKinstry argues that his statutory speedy-trial right was violated in case No. 15-CF-151 due to the circuit court granting the State's pretrial motion for a continuance to obtain deoxyribonucleic acid (DNA) test results. We reverse and remand for further proceedings.

¶ 4                                I. BACKGROUND

¶ 5        On January 24, 2014, McKinstry was charged by indictment in Kankakee County circuit court case No. 14-CF-33 with armed robbery (720 ILCS 5/18-2(a)(1) (West 2012)), robbery (*id.* § 18-1), and aggravated battery (*id.* § 12-3.05(c)). He was convicted of aggravated battery on January 26, 2015, and was sentenced to two years of conditional discharge.

¶ 6        On March 26, 2015, McKinstry was charged by information in Kankakee County circuit court case No. 15-CF-151 with home invasion (720 ILCS 5/19-6(a)(4) (West 2014)) and attempted armed robbery (*id.* § 8-4(a)). On March 30, 2015, assistant public defender Imani Drew was assigned to the case.

¶ 7        Shortly thereafter, the State filed a motion to revoke McKinstry's conditional discharge in case No. 14-CF-33 based on the new charges.

¶ 8        The criminal information in case No. 15-CF-151 was superseded by indictment on April 17, 2015. The indictment included the original charges of home invasion and attempted armed robbery and added two counts of aggravated battery (*id.* § 12-3.05(f)(1)) and one count of reckless discharge of a firearm (*id.* § 24-1.5). According to the indictment, McKinstry was accused of knowingly entering a dwelling without authority on March 25, 2015, threatening the imminent use of force upon an individual, and striking two individuals in the head or face with a

2

handgun. The indictment also alleged that McKinstry recklessly discharged the handgun during the incident. McKinstry was arrested on that day and was never released from custody.

¶ 9 On June 26, 2015, and several dates thereafter, continuances attributable to McKinstry were granted in the case up to September 21, 2015, when the case was called for a jury trial.

¶ 10 When the parties appeared for trial on September 21, 2015, the circuit court initially addressed a question of whether Drew had been reassigned to juvenile court and was being taken off McKinstry's case. A second public defender claimed in court that he had been assigned to the case, had just received the case file that morning, and wanted a continuance.

¶ 11 Further discussion was had because Drew stated she was unaware that the case had been assigned to a new public defender that morning; she believed that she was still on the case. During the discussion, the parties noted that some time earlier, the prosecutor, Assistant State's Attorney Brenda Claudio, had told Drew that she would be filing a motion to continue the trial because she did not have the DNA test results back. Claudio offered to send Drew the motion, but Drew declined, stating that she would just deal with the motion in court on the day of trial. Drew further stated that she assumed the court would grant the motion to continue and that she would have been reassigned by the time the trial began. No motion to continue the trial had been filed by Claudio at the time this matter was being discussed.

¶ 12 A short recess was taken while the chief public defender was located. When the case was recalled, the chief public defender stated, "Judge, there are going to be some reassignments. Actually on this particular case I talked to Ms. Drew. It is set for trial today and our office is ready for trial." Claudio added that the State was ready for trial as well, as she had discovered that she did in fact have the DNA test results. The court then told McKinstry that Drew was still his attorney and that he would still be tried that day.

¶ 13    Another recess was taken because Claudio wanted to file additional discovery—the DNA test results—which she had yet to review. The case was recalled in the afternoon and the following exchange took place:

> "MS. CLAUDIO: Judge, I am going to file my motion to continue as soon as I find it. I'm asking for an extra 120 [days]. Judge, we received a lab report that was e-mailed to us on Saturday in the afternoon hours. I just had a chance to look at it like on our way here. I tendered that to Ms. Drew.
>
> THE COURT: You got one for me?
>
> MS. DREW: I acknowledge receipt of that.
>
> MS. CLAUDIO: I do. I'm a little unorganized apparently.
>
> THE COURT: The state under the statute under the law on a DNA case they have a right to file for an additional 120 days. That's the law in the statute book and that's what she's saying she's doing is because the DNA is not done that they are asking for an additional 120 days.
>
> MS. CLAUDIO: I am, Judge. I need to request 417. And based on the wording of the DNA report, I just want to explore if there's any other options.
>
> THE COURT: Okay.
>
> MS. CLAUDIO: I'm sorry, Judge. I'm just not locating it. I think I threw it in here. Based on that, Judge, I think there's other issues.

4

THE COURT: Sounds like we're going to need a status.

MS. CLAUDIO: We can. I'm asking it be set.

MS. DREW: My client wants to know—he's objecting to a continuance.

THE COURT: Well, you're his attorney as you stand—

MS. DREW: Yes.

THE COURT: As of today, to be really clear, Ms. Drew is still your attorney.

MS. DREW: Right.

THE COURT: She is objecting to the motion to continue, okay?

MS. DREW: It was just a misunderstanding with [the other assistant public defender], your Honor.

THE COURT: I want to make sure for obvious reasons that the record is clear, but I'm going to grant the state's motion for a continuance.

MS. CLAUDIO: As soon as I find it.

THE COURT: In DNA cases there's special cases the state with due diligence can ask for additional 120 days to get the DNA. I will show your objection on the record."

The court then set the case for a status hearing for October 8, 2015.

¶ 14        On September 25, 2015, newly assigned counsel for McKinstry filed her appearance.

5

¶ 15        At the hearing on October 8, 2015, Claudio informed the circuit court that she had obtained the DNA test results and that she had tendered them to the defense. Counsel for McKinstry then requested and was granted a continuance to November 10, 2015.

¶ 16        The case was continued numerous times for various reasons, all attributable to McKinstry, until a jury trial was held between March 20 and 28, 2017. At the close of the trial, McKinstry was found guilty on all five counts. He was later sentenced to concurrent prison terms of 27 years for home invasion, 8 years for attempted armed robbery, 4 years for one aggravated battery count, and 6 years for the other aggravated battery count. The reckless discharge of a firearm count was merged into the home invasion count. At that sentencing hearing, the circuit court also revoked McKinstry's conditional discharge sentence in case No. 14-CF-33.

¶ 17        McKinstry appealed from both circuit court cases.

¶ 18                                II. ANALYSIS

¶ 19        On appeal, McKinstry argues that his statutory speedy-trial right was violated. Specifically, he contends that the circuit court improvidently granted the State's pretrial motion to continue to obtain DNA test results and that doing so resulted in the case not being brought to trial within 120 days of his incarceration on the charges in case No. 15-CF-151.

¶ 20        The United States and Illinois Constitutions guarantee a defendant the right to a speedy trial. U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8; see also *People v. Cordell*, 223 Ill. 2d 380, 385 (2006). "The Illinois speedy-trial statute implements the constitutional right to a speedy trial [citation], although the constitutional and statutory rights to a speedy trial are not necessarily coextensive [citation]." *People v. Janusz*, 2020 IL App (2d) 190017, ¶ 55. A defendant who remains in custody need not demand a speedy trial for the statutory 120-day term to commence. *People v. Colson*, 339 Ill. App. 3d 1039, 1041 (2003). Additionally, the statute must be liberally

construed in a defendant's favor. *People v. Swanson*, 322 Ill. App. 3d 339, 342 (2001). The

ultimate question of whether a defendant's statutory speedy-trial right was violated is subject to

*de novo* review. *Janusz*, 2020 IL App (2d) 190017, ¶ 56.

¶ 21    In relevant part, section 103-5(a) of the Code of Criminal Procedure of 1963 (725 ILCS

5/103-5(a) (West 2014)) provides

> "Every person in custody in this State for an alleged offense shall
>
> be tried by the court having jurisdiction within 120 days from the
>
> date he or she was taken into custody unless delay is occasioned by
>
> the defendant ***. Delay shall be considered to be agreed to by the
>
> defendant unless he or she objects to the delay by making a written
>
> demand for trial or an oral demand for trial on the record."

¶ 22    In *Cordell*, our supreme court construed "delay" for purposes of section 103-5(a), stating

the following:

> "There is nothing in the section to indicate that the 'delay' must be
>
> of a set trial date. Rather, the section provides only a starting
>
> point—the date custody begins, and an ending point—120 days
>
> later. Any action by either party or the trial court that moves the
>
> trial date outside of that 120-day window qualifies as a delay for
>
> purposes of the section." *Cordell*, 223 Ill. 2d at 390.

¶ 23    In this case, McKinstry was arrested on March 25, 2015, and remained in custody

throughout the proceedings. Accordingly, 120 days from the day after his arrest was July 23,

2015. See 5 ILCS 70/1.11 (West 2014) (stating, in relevant part, that "[t]he time within which

any act provided by law is to be done shall be computed by excluding the first day and including

7

the last"). However, based on continuances attributable to McKinstry, the speedy-trial period tolled on June 26 and resumed on September 21, 2015, the day of the originally scheduled trial, on which date 93 days had run against the 120-day speedy-trial period.

¶ 24     On September 21, 2015, when the trial was supposed to begin, it was determined that Drew was still serving as McKinstry's counsel and was ready for trial, but it was also noted that the State was going to move for a continuance to obtain DNA test results. The circumstances surrounding the grant of that motion provide important context for the resolution of this case.

¶ 25     During the discussion about the State's motion to continue, Drew emphasized that the case would have to be reassigned to another assistant public defender if the motion were granted and the trial did not proceed that day. The public defender himself was brought in to confirm that this would occur. Then both the defense and the State informed the court that they were ready for trial, and the court informed McKinstry that he would be tried that day. However, after a recess, Claudio informed the court that she had received the DNA test results but "just want[ed] to explore if there's any other options."

¶ 26     In relevant part, section 103-5(c) of the Code of Criminal Procedure of 1963 states:

> "If the court determines that the State has exercised without
> success due diligence to obtain results of DNA testing that is
> material to the case and that there are reasonable grounds to
> believe that such results may be obtained at a later day, the court
> may continue the cause on application of the State for not more
> than an additional 120 days." 725 ILCS 5/103-5(c) (West 2014).

Notably, the statute *requires* the State to show that despite its exercise of due diligence, it did not receive the DNA results in time for a scheduled trial within the speedy trial term. *Id.* Further, the

8

court is to determine on a contextual basis whether the State in fact exercised, without success, due diligence. *Swanson*, 322 Ill. App. 3d at 342. In *Swanson* this court identified the following requirements to show due diligence:

> "first, the State should provide a full explanation of each and every step taken to complete DNA testing within the 120-day term; second, taken together, these steps must comprise a course of action that a reasonable and prudent person intent upon completing tests within 120 days would follow; and third, the State should explain why those efforts fell short and resulted in an unavoidable delay." *Id.* at 342-43.

¶ 27      In this case, Claudio never attempted to show that the State had exercised due diligence to obtain the DNA test results and had been unsuccessful. Indeed, such a showing could not be made because the State had already obtained the DNA test results. Rather than not having those results, Claudio's statement that she "just want[ed] to explore if there's any other options" seemed to indicate that she merely did not like the results. Regardless, without waiting for Claudio to find her written motion to continue or to make any argument at all; the court granted the motion as if doing so were a mere formality. That ruling was contrary to the clear procedure required by the statute and case law and therefore was an abuse of discretion. See *id.* at 342 (noting that "[a] reviewing court will not overturn a trial court's ruling on due diligence unless it amounts to a clear abuse of discretion").

¶ 28      The court's erroneous grant of the State's motion not only resulted in a delay attributable to the State but also had the practical effect of forcing the defendant—now represented by new, unprepared counsel—to move for a continuance at the next hearing. Four days after the court granted the State's motion, new counsel for McKinstry filed her appearance. Thirteen days later,

9

on October 8, 2015, the parties appeared in court for the scheduled status hearing. At that point, 111 days had run against the 120-day speedy-trial period. At that hearing, Claudio informed the court that she had obtained the DNA test results and had tendered them to the defense. McKinstry's new counsel sought and was granted the necessary continuance, and the case was continued to November 10, 2015.

¶ 29    The unique circumstances of this case compel us to find that due to the court's erroneous grant of the State's motion to continue, the delay between October 8, 2015, and November 10, 2015—a period of 33 days—should not be attributed to the defense. The erroneous grant of the State's motion to continue created a situation in which it was not possible for the case to go to trial by October 8, 2015. Not only was it known that the case would imminently be reassigned to a new assistant public defender, but also the case would not be going to trial at least until after the State heard back on whatever DNA "options" it was exploring. Under these circumstances, we hold that the delay until November 10, 2015, should not be attributed to McKinstry. See *People v. Mooney*, 2019 IL App (3d) 150607, ¶ 23 (holding that a delay resulting from a continuance requested by the defense would not be attributable to the defendant because it was necessitated by the State's late filing of discovery). Because that delay resulted in the State's failure to bring the case to trial within 120 days, McKinstry's speedy-trial right was violated and his conviction in circuit court case No. 15-CF-151 must be reversed.

¶ 30    We also note that the revocation of McKinstry's conditional discharge in circuit court case No. 14-CF-33 was predicated on his conviction in case No. 15-CF-151. Because we have reversed McKinstry's conviction in No. 15-CF-151, we also reverse the revocation of his conditional discharge in case No. 14-CF-33 and remand for further proceedings (see *People v. Colon*, 225 Ill. 2d 125, 155 (2007) (holding that "collateral estoppel does not preclude the State

10

from proceeding with a probation revocation hearing after a defendant has been acquitted of the substantive charge").

¶ 31                                    III. CONCLUSION

¶ 32        The judgment of the circuit court of Kankakee County in case No. 15-CF-151 is reversed. The judgment of the circuit court of Kankakee County in case No. 14-CF-33 is reversed and the cause is remanded for further proceedings in case No. 14-CF-33.

¶ 33        No. 14-CF-33, Reversed and remanded.

¶ 34        No. 15-CF-151, Reversed.

¶ 35        JUSTICE LYTTON, specially concurring:

¶ 1        I concur with Justice McDade's well-reasoned majority opinion. However, I would add some thoughts of my own.

¶ 2        The constitutional right to a speedy trial is implemented by statute pursuant to section 103-5 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-5 (West 2014)). The speedy trial statute provides, in part, that "[e]very person in custody in this State for an alleged offense shall be tried *** within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant." *Id.* § 103-5(a). A defendant is entitled to be discharged from custody if he is not brought to trial within the speedy trial period. *Id.* § 103-5(d) .

¶ 3        Extensions of the usual 120-day speedy trial period for delays in DNA testing may be permitted under the speedy trial statute. Specifically, the statute provides,

> "[i]f the court determines that the State has exercised without success due
> diligence to obtain results of DNA testing that is material to the case and that
> there are reasonable grounds to believe that such results may be obtained at a later

11

day, the court may continue the cause on application of the State for not more than an additional 120 days." *Id.* § 103-5(c).

¶ 4   A trial court's ruling on whether the State has exercised due diligence in discovering and processing DNA will not be overturned on appeal "unless it amounts to a clear abuse of discretion." *People v. Swanson*, 322 Ill. App. 3d 339, 342 (2001) (granting State's motion to continue was not an abuse of discretion). The State carries the burden of proof on the question of whether the State exercised due diligence, and the trial court must make a determination "on a case-by-case basis after careful review of the particular circumstances presented." *Id.* In assessing diligence, courts have established the following three requirements: (1) the State should provide a full explanation of every step taken to complete DNA testing within the first 120 days; (2) the steps must comprise a course of action that a reasonable and prudent person intent upon completing tests within 120 days would follow; and (3) the State should explain why those efforts fell short and resulted in an unavoidable delay. See *People v. Battles*, 311 Ill. App. 3d 991, 998 (2000) (holding that trial court's decision to grant State's motion to continue was an abuse of discretion where State wasted two weeks before delivering materials to lab).

¶ 5   Whether the State has shown due diligence is determined on the particular circumstance presented by the record as it existed at the time of the motion for continuance. *Swanson*, 322 Ill. App. 3d at 342. Thus, when a defendant challenges the trial court's extension of a 120-day deadline on appeal, we are required to examine the record as it existed at the time the motion was made. *Battles*, 311 Ill. App. 3d at 998.

¶ 6   Here, in determining whether the continuance for DNA testing was an abuse of discretion, we must determine whether the State made a sufficient showing that it exercised due diligence in its attempt to accomplish DNA testing within the 120-day speedy trial term. In

12

assessing the State's diligence, we are required to consider the record at the time the motion was made. In this case, at the time the State made its oral motion to extend the speedy trial term, it failed to provide a full and detailed explanation for the delay. More specifically, at the morning session of the September 21, 2015, trial date, the prosecutor stated that she had not yet received the DNA test results. She then stated that the State had, in fact, already received the DNA lab report and informed the court that she was ready for trial. However, after returning from the noon recess, the prosecutor made an oral motion to continue to request an additional 120 days for DNA testing without providing any specific details about the due diligence performed by the State to obtain the DNA results. The prosecutor simply informed the court that based on the wording of the DNA report, she wanted to "explore if there's any other options."

¶ 7        Further, in presenting its oral motion, the State did not mention the materiality of the DNA evidence or the results of the test. The DNA test results were so inconclusive the forensic analysist was unable to tell if the DNA found on the firearm was male or female. The DNA results were not inculpatory or exculpatory. Consequently, the DNA evidence was not material to the case, as required for a continuance under section 105-3(c) of the Code. See 725 ILCS 5/105-5(c) (West 2014) (continuance requires proof that DNA testing is "material to the case").

¶ 8        This case is similar to *Battles*, 311 Ill. App. 3d 991, where the State did not meet its burden under section 103-5(c) for a continuance of trial beyond the original speedy trial deadline. In *Battles*, the trial court granted the State's section 103-5(c) motion to continue without making any factual findings. On appeal, the court found that the State did not meet its burden of showing due diligence to obtain the DNA results. The court found that the trial court's grant of the continuance was an abuse of discretion because the prosecution was simply seeking refuge from an approaching deadline by requesting the continuance. The same can be said here.

13

The prosecutor had the DNA results; she knew they were not helpful. She simply requested a continuance in an attempt to buy more time to develop a new theory in the case.

¶ 9    I also believe the State's belated written application for the DNA continuance, filed *after* the trial court granted its oral motion, underscores the notion that the prosecutor was simply asking for a continuance for the sake of a continuance. The assertions in the application were sparse and contradicted the prosecutor's statements before the court. In earlier sessions that day, the prosecutor told the court and the public defender that she had the DNA report. However, the application provided that the State acted with due diligence to obtain DNA results within the 120-day statutory period, "but we have not yet received the results." The written application did not belatedly justify the earlier granting of the continuance.

¶ 10    The State cites *Swanson* in support of its argument, but *Swanson* is distinguishable. In that case, a blood sample was taken from defendant on the day he was taken into custody. A few weeks later, the evidence was sent to the crime lab to determine if DNA was present for testing. Due to a backlog, the lab did not perform tests until two months later. The State immediately requested DNA testing as soon as the crime lab personnel confirmed that the evidence contained material suitable for testing. The trial court granted the State's motion to continue. On appeal, this court affirmed, noting that the State immediately requested expedited DNA testing after being informed there was DNA evidence available for DNA testing and established the materiality of the evidence in its application. The State's actions in this case do not demonstrate the same due diligence, nor did the prosecutor establish materiality.

¶ 11    Here, because the State did not make any showing of materiality, the trial court could not have made a finding on that factor, as required by the statute. Consequently, the trial court abused its discretion by granting the continuance as, essentially, a matter of right. *People v.*

14

*Colson*, 339 Ill. App. 3d 1039, 1048 (2003) ("The provision for DNA testing was not meant to provide an automatic continuance in every trial that involve[s] DNA testing because the statute requires that the State must exercise without success due diligence to obtain results of DNA testing." (Internal quotation marks omitted.)). In this case, defendant was not tried in accordance with the speedy trial statute.

**No. 3-18-0598**

| | |
|---|---|
| **Cite as:** | *People v. McKinstry*, 2022 IL App (3d) 180598 |
| **Decision Under Review:** | Appeal from the Circuit Court of Kankakee County, Nos. 14-CF-33, 15-CF-151; the Hon. Kathy S. Bradshaw-Elliott, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Karalis, and Santiago A. Durango, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Jim Rowe, State's Attorney, of Kankakee (Patrick Delfino, Thomas D. Arado, and Gary F. Gnidovec, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |