No. 2-08-0509     Filed:  5-12-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | Nos. 06--CF--4956 06--CF--4957 |
| MAHOGANY T. BONDS, | ) ) ) | Honorable John R. Truitt, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

The State appeals the trial court's order dismissing indictments filed against Mahogany T. Bonds for the State's violation of her right to a speedy trial under sections 103--5(b) and (c) of the Code of Criminal Procedure of 1963 (the speedy-trial statute) (725 ILCS 5/103--5(b), (c) (West 2006)).  We determine that a written demand filed with the clerk of the court but not provided to the State was insufficient to provide notice under section 103--5(b) when the only indication of notice to the State was an oral, in-court statement from Bonds' attorney that he "believed" he would file a demand.  We further determine that the trial court properly allowed an extension of time for DNA testing under section 103--5(c), though it properly attributed that delay to the State.  Therefore, because the trial court discharged Bonds before the speedy-trial period had run, we reverse and remand for further proceedings.

## I. BACKGROUND

On December 15, 2006, Bonds was indicted on charges of aggravated battery (720 ILCS 5/12--4(a) (West 2006)) and mob action (720 ILCS 5/25--1(d) (West 2006)). The charges alleged that Bonds and three other women hit a fourth woman with glass objects, causing injury. On February 8, 2007, Bonds was released on bond without making a written speedy-trial demand.

On August 15, 2007, Bonds appeared for a status hearing, and trial was set for November 13, 2007. The following colloquy then occurred:

"MR. LIGHT [defense counsel]: I can say this: I believe on behalf of Mahogany I will be filing today or tomorrow a demand for the benefit of my client.

THE COURT: A demand? I'm sorry.

MR. LIGHT: A speedy trial demand.

THE COURT: Okay."

On August 16, 2007, a written speedy-trial demand was filed, and the court noted the demand in a docket entry, but Bonds did not provide the demand to the State.

On November 8, 2007, the trial court continued the trial on the State's motion without objection from Bonds. At the hearing, Bonds' counsel indicated, in the presence of the State, that he did not recall filing a speedy-trial demand. Bonds' counsel was then corrected on that matter by counsel for a codefendant. The court also allowed joinder of the codefendants and granted a motion requiring them to submit DNA samples. The DNA motion arose because a codefendant, Jeri Malone, indicated the intent to raise self-defense based on the presence of blood on a knife found in the victim's purse; she believed the blood would prove to be from one of the codefendants. The

State told the court: "Obviously--I think it would be relevant to perhaps all of them if it's a co-defendant's blood on the knife versus the victims [sic]." Trial was set for January 22, 2008.

On January 2, 2008, a status hearing was held. The State informed the court that it had negotiated a plea agreement with Jeri Malone. The State also told the court that it had not yet sent samples for DNA testing, and it made an oral motion to continue without any mention of section 103--5(c). Bonds objected, noted the previous speedy-trial demand, and asked for a trial date to preserve the speedy-trial right. The State acknowledged that it knew of the previous trial demand, stating: "The speedy trial demand was actually only recently filed *** I believe on the last court date." The court granted the motion over Bonds' objection.

On February 28, 2008, the State filed a written motion to continue under section 103--5(c), alleging that DNA test results were not yet available. By that time, Jeri Malone was no longer a codefendant in the case. The motion provided a time line as to when samples were obtained and sent, but did not make any specific allegations about how they were material to the case except to state that there were reasonable grounds to believe that results of DNA testing material to the case might be obtained at a later date. At a hearing on the matter, the State said that the lab reported in early February that the normal processing time was approximately three months, but the State added that it could have the results by April 7, 2008, should the court grant a continuance. The State suggested setting trial for April 21, 2008, to allow the defense time to go over the DNA results after they came in. Bonds objected and asked for the earliest possible trial date in order to preserve the speedy-trial right. The court granted the motion over Bonds' objection. When discussing a trial date for April, Bonds requested April 7, but the court set the date for April 21. Bonds did not present any

evidence or argument to dispute the materiality of the DNA evidence or to show that the State did not act with due diligence.

On April 15, 2008, Bonds filed a motion to dismiss, alleging that the State failed to bring her to trial within the time required by the speedy-trial statute. On April 17, 2008, a hearing was held, and the State asked to continue because a witness was out of town for the month. There was no mention of section 103--5(c), and no written motion was filed. The court expressed concerns about the speedy-trial issue, stated that it would need to look at transcripts of previous hearings to determine the matter, and granted the State's motion to continue over Bonds' objection, with a specific finding that the delay would be attributable to State. Trial was set for June 2, 2008.

On May 8, 2008, a hearing was held on the speedy-trial issue. The trial court found that the demand filed on August 16, 2007, was effective based on the August 15, 2007, in-court statements of Bonds' attorney. The court found that the State exercised due diligence such that it was entitled to additional time for DNA testing, but the court did not make specific findings about whether the evidence was material to the case. The court then found that the running of the time was not tolled and that the State did not get an automatic 120 extra days. Instead, the court determined that, because the State offered April 7, 2008, as the date that DNA results would be available, it had 39 additional days. The court then determined that the June 2, 2008, trial date fell outside of the time allowed to bring Bonds to trial. Thus, the court granted the motion to dismiss. The State appeals under Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)).

II. ANALYSIS

A. August 16, 2007--January 2, 2008: The Speedy-Trial Demand

The State first contends that Bonds' speedy-trial demand was ineffective because it was not served on the State's Attorney and the statements by Bonds' attorney on August 15, 2007, were not sufficient to provide notice of the demand.

"The right to a speedy trial is guaranteed by the Federal and Illinois Constitutions (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8)." People v. Staten, 159 Ill. 2d 419, 426 (1994). A criminal defendant in Illinois also has a statutory right to a speedy trial. 725 ILCS 5/103--5 (West 2006). The speedy-trial statute enforces the constitutional right to a speedy trial and its protections are to be liberally construed in favor of the defendant. People v. Buford, 374 Ill. App. 3d 369, 372 (2007). Our supreme court has held that "the statutory right to a speedy trial is not the precise equivalent of the constitutional right." Staten, 159 Ill. 2d at 426. Therefore, "[p]roof of a violation of the statutory right requires only that the defendant has not been tried within the period set by statute and that defendant has not caused or contributed to the delays." Staten, 159 Ill. 2d at 426.

We review the trial court's ultimate determinations for an abuse of discretion. Buford, 374 Ill. App. 3d at 372. On a legal question, however, the standard of review is de novo. People v. King, 366 Ill. App. 3d 552, 554 (2006). Here, the issue of whether the demand was effective does not depend on the trial court's discretion. Instead, the question is whether the August 15, 2007, in-court statements by Bonds' counsel put the State on notice of the demand as a matter of law. Accordingly, we review the issue de novo. See People v. Dockery, 313 Ill. App. 3d 684, 685 (2000).

Section 103--5(a) of the speedy-trial statute provides an automatic 120-day speedy-trial right for a person held in custody on the pending charge and does not require the person to file a demand to exercise that right. 725 ILCS 5/103--5(a) (West 2006). Section 103--5(b) of the speedy-trial statute contains a 160-day speedy-trial right for a person released on bond or recognizance, and the

period begins to run only when the accused files a written speedy-trial demand. 725 ILCS 5/103--5(b) (West 2006).

Section 103--5(b) does not specifically require the defendant to serve the written demand on the State. However, interpreting an earlier version of section 103--5(b) that did not specify the form of the demand, our supreme court held that, although the statute contains no explicit requirement of notice, the term "demand" itself implies that the defendant's stated desire to be tried within 160 days must be conveyed to those persons who are in a position to fulfill that desire. People v. Jones, 84 Ill. 2d 162, 167 (1981). Thus, to be effective, the demand must be "communicated" to the State. Jones, 84 Ill. 2d at 167.

Section 103--5(b) is satisfied when the State has actual notice of the demand. For example, in People v. Moore, 99 Ill. App. 3d 664, 667 (1981), when defense counsel answered ready for trial in the State's presence and the court specifically stated that a speedy-trial demand had been made, the demand was sufficient. See also People v. Lendabarker, 215 Ill. App. 3d 540, 552 (1991) (holding that the State was on notice because notice was filed with the court clerk and mailed to the State's Attorney); People v. Snyder, 32 Ill. App. 3d 1003, 1004 (1975) (holding that the State had notice because defendant orally requested a speedy trial at a hearing where the State was present and the demand was entered on the trial court's docket).

Conversely, in Jones, a written demand was filed with the clerk of the court, but notice of that demand was never communicated to the State. There, our supreme court held that the mere filing of the demand and entry of it on the docket sheet did not put the State on constructive notice. Jones, 84 Ill. 2d at 169. The Jones court noted that "[t]o permit a defendant to invoke his statutory right to a speedy trial without notifying the prosecution would allow him to exploit the possibility that the

State will unwittingly fail to bring him to trial within the prescribed period." Jones, 84 Ill. 2d at 168. Likewise, in People v. Hamilton, 65 Ill. App. 3d 261, 263 (1978), this court held that a written demand filed with the court must be accompanied by affirmative conduct by the defendant that clearly and unequivocally puts the court and the State on notice that the defendant is demanding trial.

Here, Bonds did not provide a copy of the speedy-trial demand to the State, and the record does not support the trial court's conclusion that the State had actual notice of the demand when it was filed on August 16, 2007. The day before the demand was filed, Bonds' counsel, in the presence of the State, informed the court that he "believed" he would be filing a demand within the next two days. However, he did not definitively state that he would actually do so. Then, when the demand was filed, Bonds' counsel did not give notice to the State. Thus, there was no affirmative conduct that clearly and unequivocally put the State on notice that Bonds had demanded trial. Our conclusion that there was no affirmative conduct that put the State on notice is further supported by the conduct of Bonds' counsel on November 8, 2007, when he apparently had forgotten that a demand had even been filed, expressing surprise when reminded of it. In light of the fact that Bonds' own counsel was unaware of the demand, we cannot conclude that the State was aware of it before November 8, 2007.

At the November 8, 2007, hearing, the demand was referenced in the presence of the State. Thus, as of November 8, 2007, the State had actual notice of the demand. The demand became effective at that time. That same day, Bonds agreed to the State's request for a continuance, making the delay between November 8, 2007, and January 2, 2008, attributable to her. People v. Woodrum, 223 Ill. 2d 286, 299 (2006). Thus, the time through January 2, 2008, is attributable to Bonds, and, even if the remaining time were attributed to the State, the June 2, 2008, trial date fell within the

160-day period at 152 days. Accordingly, the trial court erred by discharging Bonds, and we reverse and remand for further proceedings.

B. January 2, 2008--April 7, 2008: Time Extension Under Section 103--5(c)

Because the trial court prematurely discharged Bonds, we need not discuss the State's remaining arguments. However, in the interest of judicial economy, we address the issues to assist the court and the parties on remand in determining the time left to bring Bonds to trial. See People v. Burns, 337 Ill. App. 3d 224, 228 (2003), rev'd on other grounds, 209 Ill. 2d 551 (2004). The State contends that, under section 103--5(c), the trial court properly granted an extension of time for it to obtain DNA evidence. The State further argues that the extension of time tolled the running of the speedy-trial statute period because that extension of time was attributable to Bonds. Bonds argues that the extension was an abuse of discretion because the DNA evidence was not material to the case and the State did not act with due diligence. She also argues that, even if the continuance was proper, the time was attributable to the State. We determine that the trial court did not abuse its discretion when it granted the continuance under section 103--5(c), but that the time was properly attributed to the State.

In 1990, the legislature amended the speedy-trial statute to accommodate the use of DNA evidence that might otherwise be lost to a speedy-trial deadline due to the time demands of DNA testing. People v. Swanson, 322 Ill. App. 3d 339, 342 (2001), citing Pub. Act 86--1210, eff. August 30, 1990; see 725 ILCS 5/103--5(c) (West 2006). Thus, section 103--5(c) provides:

"If the court determines that the State has exercised without success due diligence to obtain evidence material to the case and that there are reasonable grounds to believe that such evidence may be obtained at a later day the court may continue the cause on application of

the State for not more than an additional 60 days. If the court determines that the State has exercised without success due diligence to obtain results of DNA testing that is material to the case and that there are reasonable grounds to believe that such results may be obtained at a later day, the court may continue the cause on application of the State for not more than an additional 120 days." 725 ILCS 5/103--5(c) (West 2006).

Section 103--5(c) allows an extension, up to 120 days, to bring a defendant to trial if the trial court finds that the State has exercised due diligence in obtaining the DNA evidence and that the results of the DNA testing are material to the case. Swanson, 322 Ill. App. 3d at 342, citing 725 ILCS 5/103--5(c) (West 1998). "[S]ection 103--5(c) makes it incumbent upon the State to apply for such a continuance, and the length of any extension up to the maximum necessarily depends upon the State's request." People v. Johnson, 323 Ill. App. 3d 284, 289 (2001).

"A reviewing court will not overturn a trial court's ruling on due diligence unless it amounts to a clear abuse of discretion." Swanson, 322 Ill. App. 3d at 342. "Whether the State has exercised due diligence is a question that must be determined on a case-by-case basis after careful review of the particular circumstances presented." Swanson, 322 Ill. App. 3d at 342. "The State bears the burden of proof on the question of due diligence." Swanson, 322 Ill. App. 3d at 342.

"Whether the trial court abused its discretion when it determined the exercise of due diligence is a question reviewed by an examination of what information the court had before it when it made its finding." People v. Battles, 311 Ill. App. 3d 991, 1003 (2000). Thus, when a defendant challenges the trial court's grant of a continuance under section 103--5(c), we examine the record as it existed at the time of the motion. Battles, 311 Ill. App. 3d at 1003, citing People v. Hughes, 274 Ill. App. 3d 107, 111 (1995).

The trial court found that the State exercised due diligence to obtain evidence material to the case. The record shows that the State requested the DNA evidence in a timely fashion and sought to have the process expedited. The State also requested only the amount of time necessary to complete the testing. Thus, the State's due diligence was evident.

With respect to materiality, although Jeri Malone had been dismissed from the action, evidence that a knife in the victim's purse had blood on it from another person was material to the case. At that point, any defendant could argue that the source of the blood was responsible for injuries to the victim, or she could argue self-defense based on the evidence that the victim had used the knife on the source of the blood. Although the court failed to make specific findings, at the time of the motion, Bonds did not dispute that the State acted with due diligence and that the evidence was material to the case. Thus, at the time of the motion--the relevant time for the inquiry--the court did not abuse its discretion by granting additional time under section 103--5(c).

The State contends that the time the case was continued under section 103--5(c) should toll the running of the speedy-trial period. We initially observe that there is a lack of Illinois case law specifically addressing how additional days should be counted under section 103--5(c), and the statute is silent on the matter.

The trial court granted the State the number of days between the date of its motion and the date on which the DNA evidence would be available. That number of days was then added to the 160-day period under section 103--5(b). Relying on the Fifth District case of People v. Workman, 368 Ill. App. 3d 778, 785-86 (2006), where the court used the word "tolled" when discussing section 103--5(c), the State argues that the period is not attributable to it and is instead charged to the defendant.

Contrary to the State's contentions, the speedy-trial statute does not provide that the time given to obtain DNA results "tolls" the speedy-trial period such that the time would be attributable to the defendant. The primary task in the exercise of statutory construction is to ascertain and effectuate the intent of the legislature. People v. Skillom, 361 Ill. App. 3d 901, 908 (2005). Our inquiry begins with the language of the statute, which is the best indicator of legislative intent, and when the plain language of the statute is clear and unambiguous, we have no reason to resort to aids of construction. People v. Pullen, 192 Ill. 2d 36, 42 (2000); Skillom, 361 Ill. App. 3d at 908-09, citing Village of Mundelein v. Franco, 317 Ill. App. 3d 512, 517 (2000). Under the plain language of the speedy-trial statute, the State has a limited number of days in which to bring a defendant to trial, with section 103--5(c) allowing for an additional number of days under certain circumstances. See People v. Colson, 339 Ill. App. 3d 1039, 1041 (2003), citing 725 ILCS 5/103--5(f) (West 2000). Nothing in section 103--5(c) mentions "tolling" the statute for DNA testing. Instead, under the plain language of section 103--5(b), the clock runs against the State, except when delay is occasioned by the defendant. See 725 ILCS 5/103--5(b) (West 2006).

Here, there was no application under section 103--5(c) at the January 2, 2008, hearing. Instead, the State made an oral motion to continue without providing any section 103--5(c) request or providing any specifics about materiality of the evidence or due diligence. Bonds objected and demanded trial. Thus, the delay between January 2, 2008, and February 28, 2008, was attributable to the State. On February 28, the State presented a section 103--5(c) motion that specifically asked for an extension with April 7, 2008, as the date DNA evidence would be available. The trial court granted the motion, but set trial for April 21, 2008, over Bonds' objection, trial demand, and alternate request for an April 7 date.

Under section 103--5(c), the speedy-trial period was extended from February 28, 2008, to April 7, 2008, which was 39 days. When that is added to the 160 days the State had under section 103--5(b), the State had a total of 199 days to bring Bonds to trial. As of April 15, 2008, when Bonds moved to discharge, 104 days were attributable to the State.

### C. Bonds' Motion to Discharge

The State next argues that the time required to address Bonds' motion to discharge was a delay attributable to her. Further, the State seeks to attribute the time to May 8, 2008, when the trial court ruled on the matter, despite the fact that it successfully obtained a continuance of trial on April 17, 2008.

"Section 103--5(f) provides that '[d]elay occasioned by the defendant shall temporarily suspend for the time of the delay the period within which a person shall be tried.' " People v. Patterson, 392 Ill. App. 3d 461, 467 (2009), quoting 725 ILCS 5/103--5(f) (West 2004). Thus, a defendant waives the right to a speedy trial under section 103--5(b) where, by his or her affirmative act, he or she contributes to an actual delay of the trial or expressly agrees to the continuance on the record. People v. Cunningham, 77 Ill. App. 3d 949, 952 (1979). " 'A defendant is considered to have occasioned a delay when he requests a continuance, agrees to a continuance, or when his actions otherwise cause or contribute to the delay.' " Patterson, 392 Ill. App. 3d at 467, quoting People v. Hatch, 110 Ill. App. 3d 531, 537 (1982); see People v. Ladd, 185 Ill. 2d 602, 609 (1999) (holding defendant's motion to discharge that did not delay proceedings was not chargeable to defendant, while a specific request for a continuance to research a motion to discharge was attributed to defendant).

Here, at the time of Bonds' April 15, 2008, motion, trial was set for April 21, 2008. Bonds never sought a continuance or sought to delay the date of trial, and the State made no effort to set trial in the intervening period; thus, there was no actual delay. See People v. McKinney, 59 Ill. App. 3d 536, 541-42 (1978). Instead, at the April 17, 2008, hearing on the motion, trial was delayed at the State's request and over Bonds' objection. At that point, trial was delayed by the actions of the State. As of April 17, 2008, 106 days were attributable to the State.

### D. The State's April 17, 2008, Continuance

The State argues that the time from April 17, 2008, until the June 2, 2008, trial date constituted another extension of time under section 103--5(c). The State argues that it was entitled to a new section 103--5(c) continuance or that the application of that section can be "incremental" such that, once the trial court grants a period of time under section 103--5(c), it can continue to incrementally add time. However, the State's argument ignores that it never asked for additional time under section 103--5(c) on April 17, 2008, and the court specifically found that the time was charged to the State.

As previously discussed, section 103--5(c) makes it incumbent upon the State to apply for a continuance, and the length of any extension necessarily depends upon the State's request. Johnson, 323 Ill. App. 3d at 289. The State must also show that it exercised due diligence to obtain material evidence. People v. Toolate, 62 Ill. App. 3d 895, 898 (1978). On the other hand, section 114--4(c)(2) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114--4(c)(2) (West 2006)) allows the State to move to continue on the basis that a material witness is unavailable and the prosecution will be prejudiced by his or her absence. Such a continuance does not extend the speedy-trial period. Toolate, 62 Ill. App. 3d at 898. In the absence of a specific request under

section 103--5(c) and of findings made under that section, the motion was not made under section 103--5(c). See Toolate, 62 Ill. App. 3d at 899.

Here, on April 17, 2008, the State made no mention of section 103--5(c) and did not provide specific evidence concerning its due diligence or the witness's materiality. Further, the State's previous extension for purposes of seeking DNA testing had ended. Thus, there was no section 103--5(c) application for the trial court to grant, and no outstanding extension for the trial court to add time to. In the absence of any specific request from the State under section 103--5(c) and evidence to show that it was entitled to a continuance under that section, the continuance did not extend the speedy-trial period. The trial court dismissed the charges on May 8, 2008. At that time, 127 days of the 199-day period had run.

### III. CONCLUSION

The trial court erred when it determined that the August 16, 2007, demand was sufficient, and it wrongly discharged Bonds before the speedy-trial period had run. Accordingly, the judgment of the circuit court of Winnebago County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

McLAREN and BURKE, JJ., concur.