# Illinois Official Reports

## Appellate Court

***People v. Mooney*, 2019 IL App (3d) 150607**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRYANT K. MOONEY JR., Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0607 |
| Filed | March 1, 2019 |
| Rehearing denied | March 28, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 14-TR-9140; the Hon. Daniel L. Kennedy, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Dimitri Golfis, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Lawrence M. Bauer, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justices Holdridge and Lytton concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant, Bryant K. Mooney Jr., appeals following his conviction for driving while license suspended. He argues, *inter alia*, that defense counsel was ineffective for twice agreeing to the State's motions for continuances on the day of trial, thus tolling the speedy trial clock. We reverse defendant's conviction outright. Defendant also seeks reversal based on his assertion that the offense in question occurred in Cook County rather than Will County. Because we reverse on speedy trial grounds, we need not address defendant's second argument.

¶ 2                                                    FACTS

¶ 3     Defendant was charged via citation and complaint on February 2, 2014, with driving while license suspended (625 ILCS 5/6-303(a) (West 2014)). On August 19, 2014, defense counsel filed a speedy trial demand, requiring that defendant be tried no later than January 26, 2015. That same day, pursuant to defense counsel's request, the court set the matter for a jury trial on October 27, 2014.

¶ 4     Six days before the scheduled jury trial, the State filed a motion for continuance. In the motion, the State claimed that the arresting officer, James Jachymiak, would be unavailable on the scheduled trial date because of a previously scheduled court appearance in a different county. On October 27, 2014, defense counsel announced ready for trial, but the court granted the State's motion and set the matter for trial on January 5, 2015.

¶ 5     On the morning of January 5, 2015, defense counsel again announced ready for trial, adding that defendant was requesting a bench trial. The court immediately told counsel, without further explanation: "[Y]ou understand the predicament I am in so if it is going to go, it is not going to go until this afternoon probably." The prosecutor explained that its testifying officer in the case had not slept in two days and had to work that night at 6 p.m. The prosecutor opined that such a situation was not desirable but conceded "there is a speedy trial demand by the defendant so we have to fit it within a certain time frame." The court agreed, stating, "[w]e have to get this done" and noting that only 20 days remained on the speedy trial clock. The court instructed the parties to return at 12:15 that afternoon in an attempt to begin the trial. The prosecutor commented: "And if we know it is going to go long, I will make my motion at that time."

¶ 6     There are no further report of proceedings entries for that day. However, a written order bearing that date appears in the common law record. The order, a preprinted form with some items circled and blanks filled in, schedules a trial for March 24, 2015, a date significantly later than the January 26 deadline established by defendant's speedy trial demand. The order indicates that the continuance is on the motion of defendant. It also indicates that "Defendant agrees that speedy is tolled."

¶ 7     On March 24, 2015, defense counsel again requested a bench trial but told the court that she had been tendered a video *instanter* and would be requesting a new trial date. The court inquired as to why, in a matter originally scheduled for trial the previous October, a video was only now being tendered. The prosecutor responded that he did not know. The following colloquy ensued:

        "THE COURT: Is there any way you can watch the video and try the case?

[DEFENSE COUNSEL]: Today?

THE COURT: Well, yeah, we do have a short day today. We have to find something to do in the afternoons [*sic*].

[DEFENSE COUNSEL]: If [Y]our [H]onor prefers, I can try. I would prefer—

THE COURT: You can try? What does the video entail in driving?

[THE STATE]: Him driving? I have an expert on that topic coming up.

THE COURT: Because if [defense counsel is] vehemently moving for the motion to continue this date because you gave her the discovery late, she has grounds to do it. Are you vehemently moving for the motion for continuance?

[DEFENSE COUNSEL]: Judge, I am asking for a motion to continue.

THE COURT: All right, I am going to grant your continuance. Sorry, officer. She's got grounds. New date. When can he be back?"

The parties did not set a date while on the record. However, the written order (again a preprinted form) issued that day shows that the trial was set for April 21, 2015. The written order again indicates that the continuance was on the motion of defendant and that "[d]efendant agrees that speedy is tolled."

¶ 8        The matter proceeded to a bench trial on April 21, 2015, at which the court found defendant guilty of driving while license suspended. The court sentenced defendant to a term of 24 months' probation.

¶ 9                                                    ANALYSIS

¶ 10        On appeal, defendant argues that defense counsel rendered ineffective assistance by failing to move for dismissal based on a violation of his statutory speedy trial rights. Alternatively, he argues that counsel was ineffective for twice agreeing to continuances and agreeing that the speedy trial clock should be tolled when it was the State that needed the second continuance and the State's actions that necessitated the third.

¶ 11                                          I. Right to Counsel

¶ 12        Defendant couches his ineffectiveness arguments expressly in constitutional terms. That is, he argues that counsel's failures in the present case deprived him of the effective assistance guaranteed by the sixth amendment to the United States Constitution. See U.S. Const., amend. VI. This argument is, in a technical sense, erroneous. Because defendant was not sentenced to any jail time for his offense, he did not have a federal constitutional right to counsel. *Scott v. Illinois*, 440 U.S. 367, 373 (1979) (adopting "actual imprisonment as the line defining the constitutional right to appointment of counsel").

¶ 13        In Illinois however, a defendant has a statutory right to counsel in any case except those where the penalty is a fine only. 725 ILCS 5/113-3(b) (West 2014). Because this right even applies where the sixth amendment right does not, it is often said that "Illinois provides a right to counsel that is broader than the sixth amendment right to counsel." *People v. Campbell*, 224 Ill. 2d 80, 85 (2006).

¶ 14        In the sixth amendment context, the United States Supreme Court has held that the right to assistance of counsel is the right to "*effective* assistance of competent counsel." (Emphasis added.) *McMann v. Richardson*, 397 U.S. 759, 771 (1970). The same can be no less true of a

statutory right to counsel. See *In re Carmody*, 274 Ill. App. 3d 46, 54 (1995) (holding that the right to counsel at involuntary commitment proceedings provided by the Mental Health and Developmental Disabilities Code (405 ILCS 5/3-805 (West 1992)) "implicitly includes the right to the effective assistance of that counsel"); see also *In re J.C.*, 163 Ill. App. 3d 877, 891 (1987) ("The right to counsel is specifically included in the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701-20 (1)), and implicit within that right is that counsel's representation be effective.").

¶ 15    We would be remiss if we did not briefly acknowledge and distinguish the long-standing statutory exception to the rule that the right to counsel implies the right to effective counsel—the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). While that Act provides a right to counsel to postconviction petitioners (*id.* § 122-4), our supreme court has held since 1990 that particular right only guarantees "a *reasonable* level of assistance in post-conviction proceedings." (Emphasis in original.) *People v. Owens*, 139 Ill. 2d 351, 364 (1990). The court explained the distinction by emphasizing that, in the trial context, counsel acts as a shield to protect defendants from the "prosecutorial forces of the State." *Id.* at 365. In contrast, postconviction counsel's role is merely to "shape [petitioners'] complaints into the proper legal form and to present those complaints to the court." *Id.* Given that the right to counsel granted by section 113-3(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-3(b) (West 2014)) pertains specifically to the trial context, it is clear that it must implicitly include the right to effective assistance of counsel.

¶ 16    Where effective assistance is required, the familiar two-part *Strickland* standard (*Strickland v. Washington*, 466 U.S. 668 (1984)) is applicable. *E.g.*, *Carmody*, 274 Ill. App. 3d at 55 ("Although grounded in the sixth amendment, we believe that *Strickland* provides a reasonable and workable standard for reviewing claims of ineffective assistance of counsel."). To prevail on an ineffectiveness claim, "[a] defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v. Manning*, 241 Ill. 2d 319, 326 (2011). In order to satisfy the prejudice prong, a defendant must prove a reasonable probability exists that, but for counsel's deficient performance, the outcome of the trial would have been different. *People v. Smith*, 195 Ill. 2d 179, 188 (2000).

¶ 17    Thus, while defendant only references his constitutional right to counsel, the analysis by which his argument proceeds is, ultimately, the correct one. Notably, the State makes no reference to any of these issues in its brief. It does not contest that defendant was entitled to effective assistance of counsel nor does it dispute that the *Strickland* test applies. Insofar as the State could argue that defendant forfeited his argument by not referencing the statutory right to counsel, that argument is forfeited. See *People v. De La Paz*, 204 Ill. 2d 426, 433 (2003).

¶ 18                                 II. Speedy Trial

¶ 19    Section 103-5(b) of the Code holds that a defendant free on bail or recognizance must be brought to trial within 160 days of his speedy trial demand. 725 ILCS 5/103-5(b) (West 2014). The Code further dictates that "[d]elay occasioned by the defendant shall temporarily suspend for the time of the delay the period within which a person shall be tried." *Id.* § 103-5(f). Thus, to show a violation of his speedy trial right, a defendant must show that he did not "cause[ ] or contribute[ ] to the delays." *People v. Staten,* 159 Ill. 2d 419, 426 (1994). "A defense counsel's

express agreement to a continuance may be considered an affirmative act contributing to a delay which is attributable to the defendant." *People v. Kliner*, 185 Ill. 2d 81, 114 (1998). The speedy trial statute is to be liberally construed in favor of a defendant. *People v. Bonds*, 401 Ill. App. 3d 668, 671 (2010).

¶ 20    The State concedes that the first continuance in defendant's case, issued on October 27, 2014, was wholly attributable to the prosecution. Between the filing of defendant's speedy trial demand on August 19, 2014, and the second continuance on January 5, 2015, 139 days elapsed that are indisputably attributable to the State. Each of the second and third continuances resulted in delays of more than 21 days, and thus either continuance would have caused the speedy trial period to elapse unless attributable to defendant.

¶ 21    Defendant's first argument on appeal is that counsel was ineffective for failing to move to dismiss the charges against him on speedy trial grounds after the 160-day period had lapsed. Of course, this argument relies on his contention that neither the second nor third continuances can be considered attributable to him. Yet, the record contains written orders from the circuit court on each occasion that indicate defense counsel actually agreed that the speedy trial clock would be tolled. Had counsel filed a motion to dismiss on speedy trial grounds, that motion would have been meritless because of counsel's own agreements. See *People v. Cordell*, 223 Ill. 2d 380, 392-93 (2006).

¶ 22    We therefore turn to defendant's alternative argument, that counsel was ineffective for twice agreeing to toll the speedy trial clock. Defendant's argument requires this court to ask the questions: (1) Why would counsel agree that the speedy trial clock would be tolled and (2) what impact did these agreements have on defendant's right to a speedy trial?

¶ 23    Notably, the reports of proceedings from the dates of the second and third continuances demonstrate unequivocally that neither continuance was factually attributable to defendant. On January 5, 2015, the date of the second continuance, defense counsel announced ready for trial. Thereafter, the court and prosecutor discussed an apparent scheduling issue with the testifying officer, and the matter was ultimately continued. Delays occasioned by the unavailability of a State's witness or by the court's schedule cannot be attributed to a defendant. See *Bonds*, 401 Ill. App. 3d at 677; *Kliner*, 185 Ill. 2d at 119. While the third continuance, on March 24, 2015, was explicitly on defense counsel's motion, that motion was made only after the State tendered a video of the arrest moments before trial. The delay caused by defense counsel's motion should not be held attributable to a defendant if that motion was necessitated by the State's late filing of discovery.[1] *People v. Perkins*, 90 Ill. App. 3d 975, 979-80 (1980).

¶ 24    Despite these facts and the relevant law, counsel twice agreed that the speedy trial clock would be tolled. On the occasion of the second of the three continuances, counsel even allowed

---

[1]At oral argument, the State emphasized that the prosecutor was under no obligation to tender the video at all in this misdemeanor case. We find this to be irrelevant. Whether or not any obligation existed, the fact is that the prosecutor *did* tender the video, and it would have been inappropriate for defense counsel to proceed to a trial without thoroughly reviewing that piece of evidence. To that point, the State also downplays the significance of the video, pointing out that the video does not show defendant driving and suggesting that counsel could have reviewed the video in the morning and gone to trial that afternoon. However, as the only physical evidence of the location of the offense, that video was extremely significant to defendant's second argument on appeal, that he was improperly prosecuted in Will County when the offense occurred in Cook County. See *supra* ¶ 1.

an order to be entered indicating that the continuance was on *her* motion. Having announced she was ready for trial on January 5, 2015, there is no apparent trial strategy motive for agreeing to any delay. Similarly, on March 24, 2015, there is no apparent strategic benefit to defendant from counsel agreeing to toll the speedy trial clock.

¶ 25 Defendant having asserted his statutory right to a speedy trial, defense counsel was duty-bound to zealously protect that right. Instead, counsel twice agreed, despite her expressed readiness for trial on both of the scheduled dates, to allow both continuances and concessions of tolling to be attributed to defendant. This, failure was objectively unreasonable under prevailing professional norms, and it rendered counsel's performance deficient.[2]

¶ 26 The more difficult question is that of prejudice. Had counsel's performance not been deficient—that is, had counsel not agreed to twice toll the speedy trial clock—is there a reasonable probability that the outcome would have been different? See *Manning*, 241 Ill. 2d at 326.

¶ 27 At the very least, of course, counsel would have been able to file a motion to dismiss on speedy trial grounds. Her agreements to toll the speedy trial clock had completely foreclosed that course of action. See *supra* ¶ 21. Determining whether such a motion would be meritorious, had counsel not agreed to toll the speedy trial clock, inevitably involves a certain amount of speculation. On the one hand, had counsel not agreed to toll the speedy trial clock, the court could have—on either occasion—set the matter for trial within the 21 days remaining on the clock. On the other hand, it is just as possible that the court, in any event, set the matter for trial at its next available date, and counsel's nonagreement could not have changed that. In short, there is no perfect way to reconstruct what would have happened had counsel acted appropriately.

¶ 28 Hanging over this uncertainty is the actuality that defendant was—had the final two continuances been properly attributed—brought to trial outside of the 160-day window. In a similar situation, our supreme court found that a continuance was attributable to the circuit court, even though the record indicated it had been on defendant's motion. *People v. Beyah*, 67 Ill. 2d 423, 426, 428-29 (1977). The *Beyah* court did not engage in any reconstruction, or speculate as to what would have happened had the circuit court's order been correct in the first place. Instead, the court found that the defendant had been tried outside of the applicable window and reversed defendant's conviction outright. *Id.* at 429. In so doing, the court commented: "To conclude, under these circumstances ***, that the delay was occasioned by defendant would be a mockery of justice." *Id.* at 428.

¶ 29 The same is no less true here. Defendant's speedy trial period should have ended on January 26, 2015, but because of counsel's deficient performance, it did not. To pretend otherwise would be a mockery of justice.

¶ 30 On a broader scale, a finding of no prejudice here would leave this defendant, and myriad other defendants who might find themselves in this situation, with absolutely no recourse. The legislature has granted criminal defendants a statutory right to a speedy trial. Where counsel's actions serve to undermine that right, those actions must be subject to an ineffectiveness challenge. "[A] right without a remedy is no right at all." *People ex. rel Endicott v. Huddleston*, 34 Ill. App. 3d 799, 807 (1975). To hold the inevitable speculation against a defendant would

---

[2]We note that the State has not responded to defendant's alternative argument and thus does not dispute that counsel's performance was deficient for agreeing to toll the speedy trial clock.

be to hold that counsel's actions in agreeing to the continuances or agreeing to toll the speedy trial clock are, essentially, unreviewable.

¶ 31    Accordingly, we find that defense counsel's performance was deficient and that this deficiency was prejudicial in that it resulted in defendant being brought to trial outside of the statutorily prescribed 160-day period. We therefore reverse defendant's conviction for driving while license suspended outright. See *Beyah*, 67 Ill. 2d at 429.

¶ 32                                      CONCLUSION
¶ 33    The judgment of the circuit court of Will County is reversed.

¶ 34    Reversed.