**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180076-U

Order filed September 23, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0076 Circuit No. 16-CF-472 |
| ANNE M. GROSMAN, | ) ) ) | Honorable Kathy S. Bradshaw-Elliott, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justices Carter and Holdridge concurred in the judgment.

**ORDER**

¶ 1    *Held*:    (1) Defense counsel did not render ineffective assistance in relation to defendant's statutory right to a speedy trial; and (2) text message evidence introduced at trial was relevant for purposes other than propensity.

¶ 2    Defendant, Anne M. Grosman, appeals following her convictions for unlawful restraint, unlawful use of a weapon, theft, and unlawful violation of an order of protection. She argues that defense counsel rendered ineffective assistance resulting in a violation of her statutory right to a speedy trial. In the alternative, she raises a number of arguments relating to the allegedly improper use of text message evidence at her trial. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant on October 18, 2016, with unlawful violation of an order of protection (720 ILCS 5/12-3.4(a)(1) (West 2016)). The information alleged that defendant violated the order of protection on October 18 in that she entered and remained in a store where Shane Saathoff was working. On November 2, 2016, the State charged defendant with two counts of aggravated stalking (*id.* §§ 12-7.4(a)(2), (a)(3)) and one count each of unlawful restraint (*id.* § 10-3(a)), unlawful use of a weapon (*id.* § 24-1(a)(2)), and theft (*id.* § 16-1(a)(1)(A)). The information alleged that defendant placed a taser against Saathoff's body, refused to let him leave, then took his eyeglasses from him. In an indictment filed 16 days later, the State added an additional charge of unlawful violation of an order of protection (*id.* § 12-3.4(a)(1)), which alleged that defendant came within 300 feet of Saathoff on October 31, 2016. The court initially ordered defendant held without bond.

¶ 5        On November 18, 2016, defense counsel orally requested a speedy trial. That same day, the court held a hearing on defendant's motion to reduce bond. The court ultimately denied the motion and ordered that defendant continue to be held without bond.

¶ 6        The matter was scheduled for a jury trial on January 9, 2017. On that date, defense counsel answered ready for trial, but the State indicated that it needed additional time to procure phone records. As a result, the State agreed to a bond order, which the court set at $30,000.

¶ 7        The parties and the court then discussed the setting of a new trial date. Opining that "both sides want me to move quickly on this," the court set a status date for January 23, 2017, and a trial date of February 6. The court noted the possibility that it would be unavailable on February 6 but indicated that in that event defendant could be tried before a different judge. Later, the court reiterated: "I'm warning both sides because she's in custody and we're running speedy trial rights,

I might ask another judge if I can't be here to try it." Defendant posted bond and was released from custody that day.

¶ 8    When the parties reconvened on January 23, the court stated that it would be unavailable beginning on February 8, potentially jeopardizing a February 6 trial. After the State declared that more discovery would be forthcoming, the following colloquy ensued:

"THE COURT: Okay. So you're going to be getting more discovery, [defense counsel]. So you tell me, do we want to keep the 6th? Now, since she's out of custody—we got a lot of custody cases to try and there's nothing running a speedy trial at this point—

[DEFENSE COUNSEL]: Judge, I'm going to ask for a speedy trial.

THE COURT: I know but you got to put it in writing because she's out. So you're looking at a 160."

Defense counsel indicated that he would file a written speedy trial demand. He agreed to change the February 6 trial date to status date. No written speedy trial demand was ever filed.

¶ 9    On February 6, 2017, the court offered defense counsel a choice of trial dates, either June 5 or June 19. Commenting that he would "like to get it as soon as we can," counsel selected June 5.

¶ 10   At defendant's jury trial, Saathoff testified that he was in a dating relationship with defendant beginning in 2010. During that time, Saathoff and defendant sold items on eBay together. Saathoff ended the relationship in either the last week of August or the first week of September 2016. Saathoff's decision to end the relationship angered defendant.

¶ 11   Saathoff recalled that after the breakup, defendant "started constantly contacting me around the clock. It was on average like well over 100 calls a day. Well over 100 texts a day ***." Saathoff

- 3 -

usually did not answer the phone calls and he did not respond to any of the text messages after October 1. Saathoff eventually began receiving phone calls from a rotation of five or six phone numbers that he did not recognize. Defendant began contacting Saathoff's relatives. On October 7, 2016, defendant appeared at the store at which Saathoff was working. Saathoff obtained an order of protection later that day; the order was served upon defendant two days later. On October 28, the order of protection was extended for one month.

¶ 12 On October 31, 2016, Saathoff ended his shift at work at 9 p.m. and drove home to his apartment building. After exiting his car, Saathoff "heard some shuffling" behind him. He continued: "I turned around and before I knew it, somebody had clawed my glasses off of me and stuck something in my chest." Saathoff saw a person wearing a blonde wig and a cat mask, as well as a red light pressed against his chest. The person threatened to tase him. Saathoff recognized the voice as defendant's. He knew that she owned a taser.

¶ 13 Saathoff described what happened next:

> "It was more or less like, why have you been avoiding me, you're my best friend. At one point she forcibly hugged me, and she said something along the lines of if there weren't so many windows open I would tase you, but I don't want people to hear you scream."

After approximately 45 minutes, defendant lowered the taser and Saathoff was able to enter his apartment, where he called the police.

¶ 14 While with the police, Saathoff received a text message from an unfamiliar number, informing him that he would receive his glasses back if the texter was allowed to see his phone for five minutes. At the direction of a police officer, Saathoff contacted defendant about getting his

glasses back. Defendant eventually returned to the scene, at which point she was confronted by the police.

¶ 15        The State introduced into evidence an extraction report from Saathoff's cell phone. Over the course of two days and 117 pages of trial record, Saathoff painstakingly documented innumerable missed calls and text messages, all believed to have been from defendant. The text messages consisted of defendant professing her love for Saathoff, begging Saathoff to meet her or call her, and telling Saathoff that he hurt her. At other times, occasionally within the same message, defendant criticizes Saathoff and frequently uses harsh or abusive language and insults directed at him. Those texts often include references to money that Saathoff purportedly owed defendant related to their eBay business. Finally, the text messages contain numerous threats against Saathoff, ranging from amorphous threats of "drastic consequences" and payback to multiple specific threats that defendant was going to "beat up" Saathoff.[1]

¶ 16        Officer Neil Fahrow of the Bourbonnais Police Department testified that he was dispatched to Saathoff's apartment on the night of October 31, 2016. Saathoff recounted the night's events to Fahrow and showed him the messages he was receiving from defendant. Fahrow eventually advised Saathoff to respond to defendant asking for the return of his glasses. A search of defendant's car after she returned to the scene uncovered a blonde wig, a cat mask, and a taser.

¶ 17        At the close of the State's evidence, defense counsel moved for a directed verdict on the charges of aggravated stalking. In support, counsel offered the First District case of *People v. Relerford*, 2016 IL App (1st) 132531, ¶ 31, in which the court found portions of the stalking statute—the same portions underlying defendant's aggravated stalking charges—facially

_____

[1]As both parties on appeal have foregone a more detailed recitation of the text message evidence, we do the same.

unconstitutional. After initially arguing that *Relerford* was not binding in the instant proceedings, the State later conceded that, absent a Third District case on the issue, *Relerford* was, in fact, controlling. The State agreed to *nolle prosequi* the two aggravated stalking counts. The court, meanwhile, chastised defense counsel for only raising the issue "at the 11th hour."

¶ 18    In her case-in-chief, defendant testified that she was taking photographs of Halloween decorations on the night of October 31, 2016, when Saathoff saw her from his apartment. Saathoff approached her and told her he would drop the order of protection and that he wanted to be friends again. Defendant was wearing the blonde wig and cat mask as a Halloween costume. The conversation lasted approximately 10 minutes. Defendant kept her taser in her car, and it remained there during her encounter with Saathoff. Defendant testified:

> "[He] just apologized and said he wanted to be friends again and he went to
> take my mask off and leaned in for a kiss. So since he messed with my mask,
> I took his glasses off, but I wasn't going to kiss him so I hugged him and
> then he turned and ran off, and I'm like well, wait, don't forget your glasses,
> and he kept going up to his apartment so I left."

Defendant returned the glasses to Saathoff later that night, at which point she was confronted by police.

¶ 19    Defendant testified that Saathoff owed her more than $1000 for items he had purchased using money from their shared account. Defendant wanted Saathoff to either pay the money back, return the items he had purchased, or sell other items on eBay to earn money. Defendant denied that she and Saathoff were ever in a dating relationship.

¶ 20    At the jury instruction conference, the court removed the instructions relating to the aggravated stalking charges. The court and parties discussed how, if at all, the jury should be

informed of the dismissed charges. The State argued, and the court agreed, that the dismissed charges should not be mentioned at all. Defense counsel disagreed, arguing that he should tell the jury that those charges were dismissed. The court overruled that objection and instructed the parties to not reference the dismissed charges in their closing arguments.

¶ 21 The jury found defendant not guilty of violating the order of protection on October 18, 2016, but found her guilty on all other counts.

¶ 22 Defense counsel filed a posttrial motion alleging, *inter alia*, that the evidence presented on the aggravated stalking charges amounted to improper other-crimes evidence, and that the court should have instructed the jury that those charges had been dismissed. The court denied the motion and sentenced defendant to a term of 30 months' conditional discharge for unlawful restraint and concurrent terms of 24 months' conditional discharge on each of the other three charges.

¶ 23                                II. ANALYSIS

¶ 24 On appeal, defendant argues that defense counsel's ineffective assistance resulted in a violation of her statutory right to a speedy trial. She seeks outright reversal of her convictions on those grounds. In the alternative, defendant raises a number of claims of error relating to the text message evidence presented at trial.

¶ 25                              A. Speedy Trial

¶ 26 Section 103-5(a) of the Code of Criminal Procedure of 1963 mandates that a person in custody must be brought to trial within 120 days of the date she was taken into custody. 725 ILCS 5/103-5(a) (West 2016). Where a person is free on bail or recognizance, the statute dictates that they must be tried within 160 days of the date of her written demand for a speedy trial. *Id.* § 103-5(b). The statute further allows that

"[f]or the purposes of computing the 160 day period \*\*\*, every person who was in custody for an alleged offense and demanded trial and is subsequently released on bail or recognizance and demands trial, shall be given credit for time spent in custody following the making of the demand while in custody." *Id.*

"A defendant not tried within the statutory period must be released from custody and is entitled to have the charges dismissed." *People v. Hall*, 194 Ill. 2d 305, 327 (2000); 725 ILCS 5/103-5(d) (West 2016).

¶ 27     In the instant case, defendant was released from custody prior to the expiration of the 120-day period applicable to persons in custody. After her release, defense counsel did not file a written demand for a speedy trial, as required by section 103-5(b). Accordingly, there is no dispute that defendant's statutory speedy trial right was not actually violated.

¶ 28     Defendant argues, however, that counsel's failure to file a written speedy trial demand on January 23—after indicating to the court his intent to do so—amounted to deficient performance. See *Strickland v. Washington*, 466 U.S. 668 (1984). She contends that counsel's failure to object to the June 5 trial date was similarly deficient. Finally, defendant argues that but for these errors by counsel, she would have been entitled to dismissal of all charges under the speedy trial statute, as her trial was held outside of what would have been the speedy trial window.

¶ 29     Where defense counsel fails to bring a speedy trial violation to the attention of the court in the form of a motion to dismiss charges, counsel renders constitutionally ineffective assistance. *People v. Staten*, 159 Ill. 2d 419, 431 (1994). Indeed, cases discussing ineffective assistance on speedy trial grounds ordinarily involve such scenarios, in which the defendant is tried outside of the speedy trial period, but counsel has failed to assert a speedy trial violation. *E.g.*, *id.* at 432-33;

*People v. Phipps*, 238 Ill. 2d 54, 65 (2010); *People v. Cordell*, 223 Ill. 2d 380, 392-93 (2006). Where counsel failed to raise what would have been a meritorious speedy trial claim, the remedy on appeal is outright reversal. *People v. Beyah*, 67 Ill. 2d 423, 429 (1977).

¶ 30    In *People v. Mooney*, 2019 IL App (3d) 150607, ¶ 24, this court found counsel's performance deficient not for failure to assert a speedy trial violation, but for agreeing to continuances and the tolling of the speedy trial clock, despite there being no strategic benefit from doing so. In reversing the defendant's conviction outright, the *Mooney* court reasoned that had counsel not agreed to those continuances, the defendant's trial 21 days after the speedy trial deadline would have been a violation of the speedy trial statute. *Id.* ¶¶ 20, 27.

¶ 31    The *Mooney* court acknowledged that the prejudice analysis in such a case is necessarily speculative. *Id.* ¶ 27. Under *Strickland*, prejudice is shown where there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 694. In *Mooney*, that required the court to ask the question: If counsel *had* objected to the continuances, would the defendant *still* have been tried outside of the statutory window? As the *Mooney* court wrote:

> "On the one hand, had counsel not agreed to toll the speedy trial clock, the court could have—on either occasion—set the matter for trial within the 21 days remaining on the clock. On the other hand, it is just as possible that the court, in any event, set the matter for trial at its next available date, and counsel's nonagreement could not have changed that. In short, there is no perfect way to reconstruct what would have happened had counsel acted appropriately." *Mooney*, 2019 IL App (3d) 150607, ¶ 27.

¶ 32        In the present case, we find that defendant is unable to demonstrate a reasonable probability that, had counsel filed a speedy trial demand on January 23, 2017, she would have been tried outside of the resulting speedy trial window, such that a motion to dismiss charges on speedy trial grounds would have been meritorious.

¶ 33        If counsel had filed a speedy trial demand on January 23, there would have been 108 days[2] remaining in which to try defendant in satisfaction of the speedy trial statute. Unlike the 21-day period at issue in *Mooney*, it would be *extremely* speculative to conclude that the circuit court in this case would have failed to try defendant in that time frame, had counsel actually filed a demand. In fact, the record rebuts such speculation, as it reflects multiple occasions on which the court was mindful of potential speedy trial ramifications. Indeed, when defendant was in custody and was thus subject to a 120-day speedy trial clock, the court stated explicitly that defendant might have to be tried in a different courtroom in order to comply with the speedy trial statute. *Supra* ¶ 7.

¶ 34        Defendant's argument fails on a more fundamental level as well. As the record in the present case makes clear, circuit courts and the State may make scheduling decisions based upon the existence, or nonexistence, of a running speedy trial clock. Where no demand is filed, and the State and court act accordingly, a defendant should not be granted the windfall of an outright reversal based on the purported ineffective assistance of counsel. There is simply no way to determine when a defendant would have been tried if things had been done differently from the very beginning. Not only would such a procedure be exceedingly ripe for abuse, it would fully undermine the statutory requirement of a written demand.

_____

[2]This calculation is based upon the 52 days defendant spent in custody between her oral speedy trial demand on November 18, 2016, and her release from custody on January 9, 2017, and assumes *arguendo* that none of the continuances within that period are attributable to defendant. We note that throughout her briefs, defendant begins her count on November 1, her first day of custody. However, section 103-5(b) makes clear that only days spent in custody "following the making of the demand while in custody" may be applied to the 160-day time period. 725 ILCS 5/103-5(b) (West 2016).

¶ 35                                    B. Text Message Evidence

¶ 36        Defendant argues that the "text-message evidence" presented to the jury in the State's case-in-chief was introduced for "no reason" other than to prove the aggravated stalking charges. While an order of protection may be violated through the delivery of text messages, defendant points out that each violation charge in this case was premised upon defendant's physical proximity to Saathoff, and thus the text messages themselves were not direct evidence of those offenses. Accordingly, defendant contends that after the aggravated stalking charges were dismissed in the middle of trial, the text message evidence became completely irrelevant and highly prejudicial, and thus inadmissible.

¶ 37        Defendant raises three distinct claims of error relating to this argument. First, she argues that defense counsel was ineffective for failing to file a pretrial motion to dismiss the aggravated stalking charges. Second, she argues that counsel was ineffective for failing to move for a mistrial following the mid-trial dismissal of the aggravated stalking charges. Finally, she argues that the court erred in failing to give the jury an instruction "which informed the jury that the text message evidence was obsolete."

¶ 38        Each of defendant's three contentions rests on the premise that, absent the aggravated stalking charges, the text message evidence presented by the State would have been inadmissible. We therefore begin our analysis by addressing that threshold question.

¶ 39        Only relevant evidence is admissible at trial. Ill. R. Evid. 402 (eff. Jan. 1, 2011). Evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Even where evidence is relevant, it may nevertheless be

inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 40 The danger of undue prejudice is particularly heightened where the jury is presented with evidence of uncharged crimes or bad acts committed by the defendant. *E.g.*, *People v. Maya*, 2017 IL App (3d) 150079, ¶ 71; Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Specifically, such evidence presents a concern that the jury will conclude, improperly, that if a defendant committed some bad acts or crimes, she is inherently likely to have committed the charged acts as well. *People v. Pikes*, 2013 IL 115171, ¶ 16. Accordingly, other-crimes evidence is inadmissible to demonstrate such propensity. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). It may be admissible, however, for any other relevant purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*; *People v. Wilson*, 214 Ill. 2d 127, 135-36 (2005).

¶ 41 Defendant argues, repeatedly, that the text message evidence was wholly irrelevant and completely lacking any probative value with respect to any of the remaining charges. Thus, she maintains that the evidence could have been considered by the jury for no purpose other than propensity. We disagree.

¶ 42 The substance of the text messages portrayed defendant as a spurned lover, alternatively desperate to reconnect with Saathoff and furious with him. Saathoff testified that his assailant said to him: "[W]hy have you been avoiding me, you're my best friend." The texts, which express the same sentiments, thus make it more probable that defendant was, in fact, the assailant. Furthermore, the rage expressed by defendant in the text messages—whether due to the breakup or the money purportedly owed by Saathoff—clearly establishes a motive for defendant holding Saathoff at taserpoint. What is more, the text messages plainly establish intent on the part of defendant. The demonstrated obsession with Saathoff makes it highly improbable that defendant

- 12 -

came upon him by happenstance on the night of October 31—precisely the explanation defendant would later testify to. Similarly, the massive amount of texts and phone calls, and the dearth of responses from Saathoff, makes it equally improbable that the encounter was mutual. Finally, the text message in which defendant offered Saathoff his stolen glasses in exchange for five minutes with his phone is clearly relevant to all of the charges.

¶ 43        In short, the text message evidence was highly probative of multiple facts and bolstered the State's case with respect to each of the remaining charges. Contrary to defendant's assertion, the evidence was not irrelevant. Even after the dismissal of the aggravated stalking charges, the text message evidence was admissible. With that finding in mind, we address each of defendant's arguments.

¶ 44                                1. Motion to Dismiss

¶ 45        Defendant first argues that defense counsel was ineffective for failing to file a pretrial motion to dismiss the aggravated stalking charges, instead opting to move for a directed verdict in the middle of trial. The State concedes that counsel's choice amounted to deficient performance. *Relerford*, 2016 IL App (1st) 132531, ¶ 31, which would later be affirmed by our supreme court (*People v. Relerford*, 2017 IL 121094), held that the portion of the stalking statute upon which defendant's charges of aggravated stalking were premised was unconstitutional. The First District's decision in *Relerford* was binding upon the Kankakee County circuit court. See *People v. Harris*, 123 Ill. 2d 113, 128 (1988). There being no apparent strategic purpose for counsel's failure to attain the dismissal earlier, we agree that counsel's performance was deficient.

¶ 46        Defendant is nevertheless unable to demonstrate any prejudice flowing from counsel's error. *Strickland*, 466 U.S. at 688, 694. Defendant argues that had the aggravated stalking charges been dismissed before trial, the jury would not have heard the text message evidence, because it

- 13 -

would have been irrelevant and, thus, inadmissible. As we have discussed, however, that evidence had significant probative value with respect to the remaining charges. It was not irrelevant and would have been admitted at trial even if counsel had moved to dismiss the aggravated stalking charges earlier. *Supra* ¶¶ 42-43. We note that defendant only argues that the evidence in question was completely irrelevant. She makes no argument that its probative value was substantially outweighed by the risk of unfair prejudice. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 47                                       2. Motion for Mistrial

¶ 48        Defendant argues that defense counsel was ineffective for failing to move for a mistrial following the mid-trial dismissal of the aggravated stalking charges. Counsel may be ineffective for failing to file a certain motion where a reasonable probability exists that that motion would have been granted. *People v. Henderson*, 2013 IL 114040, ¶ 12. "[A] mistrial should be granted where an error of such gravity has occurred that it has infected the fundamental fairness of the trial, such that continuation of the proceeding would defeat the ends of justice." *People v. Bishop*, 218 Ill. 2d 232, 251 (2006).

¶ 49        Defendant contends that a mistrial would have been granted because the admission of irrelevant and prejudicial text messages precluded her from receiving a fair trial. We have found that those text messages, however, were highly probative and thus admissible. The admission of the text messages was not an error, let alone an error of such magnitude as to require a mistrial. See *supra* ¶ 46. As a motion for mistrial would have been without merit, it follows that counsel was not ineffective for failing to raise such a motion.

¶ 50                                       3. "Limiting Instruction"

¶ 51        Finally, defendant argues that the circuit court erred in "fail[ing] to allow a limiting jury instruction, which informed the jury that the text message evidence was obsolete." Of course, as that text message evidence remained quite relevant to the jury's determinations, we find that there was no error in failing to deliver such an instruction.

¶ 52        We recognize that defendant, in the final paragraph of her brief, references "the erroneous admission of the irrelevant evidence and the failure of the court to instruct the jury as to its limited and/or obsolete purpose." Defendant's use of "and/or" here is confounding, as instructing the jury that evidence may be considered for a limited purpose is distinct from an instruction that evidence is obsolete, and thus may not be considered for *any* purpose. As defendant repeatedly asserts that the text messages were entirely irrelevant, and never recognizes any potential permissible purpose, we construe this argument as only relating to an instruction that the evidence was "obsolete." Any argument that the court should have instructed the jury to only consider the text messages for certain, limited purposes is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 53        In any event, we disagree with defendant's characterization that defense counsel "requested" the limiting instruction in question. The record shows that defense counsel wanted the jury informed that the two aggravated stalking charges had been dropped. The court preferred to make no mention of those charges and instructed counsel not to reference them in closing. The text message evidence was not even mentioned in this colloquy. Defense counsel made no request, explicitly or implicitly, that the court issue a limiting instruction regarding that evidence. The circuit court has no duty to give a limiting instruction where the defendant does not request one. *People v. Scott*, 148 Ill. 2d 479, 527-28 (1992). Moreover, defendant does not argue that the court's failure amounted to plain error.

¶ 54                                III. CONCLUSION

- 15 -

¶ 55     For the foregoing reasons, we affirm the judgment of the circuit court of Kankakee County.

¶ 56     Affirmed.